# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

MT. HAWLEY INSURANCE COMPANY,

       *Plaintiff,*

    *vs.*

BEACH CRUISER, LLC and FLYWAY
MANAGEMENT, LLC,

       *Defendants,*

    *and*

NATIONWIDE GENERAL INSURANCE
COMPANY,

       *Intervenor Defendant.*

Case No: 1:22-cv-10354-GHW

---

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND
# OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Renier P. Pierantoni (RP9540)
Cooper, LLC – Counselors at Law
1345 Avenue of the Americas - Second Floor
New York, New York 10105
Tel: 212.878.3636
Email: renier@cooperllc.com

*Attorneys for Defendants Beach Cruiser, LLC
and Flyway Management, LLC*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF MATERIAL FACTS ...................................................................... 2

PROCEDURAL HISTORY ........................................................................................... 5

LEGAL STANDARD ..................................................................................................... 7

ARGUMENT .................................................................................................................. 8

    A.    By Renewing the Policy After Defendants' Disclosure in the Application of the Existence of Short Term Rentals, Mt. Hawley Waived its Right to Invoke its Exclusion .................................................................................................... 8

        1.    Mt. Hawley Deliberately Defined "Application" To Include Any Policy Related Information In Its Files ........................................................ 8

        2.    The Endorsement Is An Exclusion, Not A Condition Precedent ............... 9

        3.    Mt. Hawley Waived Enforcement of the Exclusionary Endorsement ...... 12

    B.    Defendants Made No Misrepresentation In Response To An Ambiguous Question ..................................................................................................... 14

        1.    Defendants' Answer to Question Three Was Reasonable from Its Perspective ................................................................................................ 14

        2.    Question Three Is Ambiguous As A Matter of Law ................................ 16

        3.    Even If Question Three Is Unambiguous, There Is No Material Nexus To The Risk ............................................................................................. 20

    C.    Mt. Hawley's Exclusionary Endorsement, If Enforced As Written, Would Violate Public Policy and Render Coverage Illusory Under New York Law ..... 20

    D.    New York Insurance Law § 3105 Prohibits Mt. Hawley From Avoiding Its Coverage Obligations To Defendants and Cannot Sustain Its Burden for Rescission or Defeating Coverage Under Insurance Law § 3105 ...................... 21

CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Admiral Ins. Co. v. Grace Industries, Inc.*,
409 B.R. 275 (2009)................................................................................21

*Am. Cas. Co. v. Nordic Leasing, Inc.*,
42 F.3d 725 (2d Cir. 1994)......................................................................7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................7

*Andover Newtown Theological Sch., Inc. v. Cont'l Cas. Co.*,
964 F.2d 1237 (1st Cir. 1992) ............................................................... 12

*Berger v. Manhattan Life Ins. Co.*,
805 F. Supp. 1097 (S.D.N.Y. 1992).......................................................20

*Brayer v. John Hancock Mut. Life Ins. Co.*,
179 F.2d 925 (2d Cir. 1950)...................................................................16

*Care Travel Co., Ltd. v. Pan American World Airways, Inc.*,
944 F.2d 983 (2d Cir.1991)....................................................................18

*Continental Casualty Co. v. Rapid–American Corp.*,
80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993)...................11

*Curry v. City of Syracuse*,
316 F. 3d 324 (2d Cir. 2003)...................................................................7

*In re Dana Corp.*,
574 F3d 129 (2d Cir. 2009)......................................................................7

*Fanger v. Manhattan Life Ins. Co. of New York, N.Y.*,
273 A.D.2d 438, 709 N.Y.S.2d 622 (2000) ....................................17, 19

*Garcia v. American General Life Ins. Co. of New York*,
264 A.D.2d 808 (1999) ...............................................................16, 17, 18

*GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroel*,
381 F. Supp. 2d 267 (S.D.N.Y. 2005)..........................................16, 18, 19

*J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*,
37 N.Y.3d 552, 183 N.E.3d 443 (2021)............................................. 11-12

*JSC Foreign Econ. Ass'n v. Int'l Dev. & Trade Servs., Inc.*,
  386 F. Supp. 2d 461 (S.D.N.Y. 2005)..........................................................................7

*Kiernan v. Dutchess Cty. Mut. Ins. Co.*,
  150 N.Y. 190, 44 N.E. 698 (1896)............................................................................13

*Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.*,
  19 F.3d 78 (2d Cir. 1994)..........................................................................................11

*Kinsale Insurance Co. v. CD Management of New Orleans, Inc.*,
  677 F.Supp.3d 401 (2023) ..........................................................................................9

*MH Lipiner & Son, Inc. v. Hanover Ins. Co.*,
  869 F.2d 685 (2d Cir. 1989)......................................................................................11

*Mighty Midgets, Inc. v. Centennial Ins. Co.*,
  47 N.Y.2d 12, 389 N.E.2d 1080 (1979)................................................................2, 22

*Mt. Hawley Ins. Co. v. Adell Plastics, Inc.*,
  348 F.Supp.3d 458 (2018) ..........................................................................................9

*Mt. Hawley Ins. Co. v. Liberato*,
  2010 WL 2653326 (E.D.N.Y. 2010).....................................................................9, 10

*Mt. Hawley Ins. Co. v. National Builders, LLC*,
  2009 WL 1919611 (S.D.N.Y. 2009)......................................................................9, 10

*Mt. Hawley Ins. Co. v. Van Cortland Village LLC*,
  2011 WL 5834255 (S.D.N.Y. 2011)......................................................................9, 10

*Nadav v. Beardwood & Co. LLC*,
  No. 17 CIV. 6465 (AKH), 2018 WL 11220833 (S.D.N.Y. Jan. 17, 2018) ..............10

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
  86 N.Y.2d 685 (1995) ...............................................................................................10

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000).....................................................................................................7

*Reliance Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*,
  262 A.D.2d 64, 691 N.Y.S.2d 458 (1999) ..........................................................2, 22

*State of N.Y. v. Blank*,
  27 F.3d 783 (2d Cir. 1994).......................................................................................11

*Titus v. Glens Falls Ins. Co.*,
  81 N.Y. 410 (1880) ...................................................................................................14

*U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*,
 443 F.Supp.2d 348 (2006) .................................................................................................11

*Wang v. Hearst Corp.*,
 203 F. Supp. 3d 344 (S.D.N.Y. 2016).................................................................................7

*Weintraub v. Great N. Ins. Co.*,
 571 F. Supp. 3d 250 (S.D.N.Y. 2021)...........................................................................13, 14

*Yu Zhang v Sabrina USA Inc., 18-CV-12332 (AJN)*,
 2021 WL 1198932, [SDNY Mar. 30, 2021] ........................................................................7

## STATUTES

28 U.S.C. section 2201 (i).........................................................................................................5

New York Insurance Law § 3105 ..................................................................................5, 6, 13, 20

## OTHER AUTHORITIES

Fed. R. Civ. P.  41 (a)(1)(ii)....................................................................................................6

Fed. R. Civ. P. 56(a) ...............................................................................................................6

Fed. R. Civ. P. 57...................................................................................................................5

22 N.Y. Jur. 2d, Contracts, S 259, at 321 ..............................................................................16

## PRELIMINARY STATEMENT

Because Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley") has failed to meet its burden to prove as a matter of undisputed fact that its exclusionary endorsement "vitiates" coverage for the underlying *Humphrey* and *Slade* claims,[1] its motion should be denied.  Mt. Hawley's singular focus on Defendants' answer to the second part of what under longstanding New York insurance law is an ambiguous two-part question as somehow violating Mt. Hawley's so-called "Amended Conditions" exclusionary endorsement is not only misleading, but belied by the following undisputed facts:

- Mt. Hawley's exclusionary endorsement broadly defines the term "Application" as including any "documents, or information submitted to" Mt. Hawley, its managing general agent, and contained in their files—those files conclusively show that Defendants repeatedly informed Mt. Hawley and its managing general agent the insured properties were short term rentals;

- Mt. Hawley's application, which was available for use to Mt. Hawley's agent and specifically aligned with Mt. Hawley's underwriting guidelines that sought to determine as to *each* of Defendants' properties which were "daily," "weekly" and "monthly" rentals, and/or which were "Airbnb or similar," was never provided to the Defendants.  While Mt. Hawley's underwriting guidelines *expressly mandated* its agent to "submit" any "short term" rental risks to Mt. Hawley for further review, and reject the risk outright as "ineligible" if it was an "Airbnb or similar," the application form Mt. Hawley's agent provided to Defendants was instead *from an entirely different insurance company*, RSUI – A Berkshire Hathaway Company – that used *none* of the precise terms, *e.g.,* "short term, "Airbnb," that Mt. Hawley's underwriting guidelines required its agent to assess the risk as one to "Submit" to Mt. Hawley or render "Ineligible."; and

- Mt. Hawley waived enforcement of its exclusionary endorsement.  Despite Mt. Hawley's bald assertion that it would have never issued coverage to the Defendants had it known the properties it operated were short term rentals, it is undisputed that Mt. Hawley *renewed* and accepted a renewal premium for the Policy *after* Defendants informed Mt. Hawley and its agent on several occasions that the insured properties were short term rentals.

---

[1]  *Humphrey vs. Beachcruiser, LLC and Flyway Management, LLC* (South Carolina Court of Common Pleas, 9th Judicial Circuit, Charleston County, Case No. 2022-CP-1003959) ("*Humphrey* Action") and the underlying claim by Jonathan Charles Slade ("Slade Claim") (together, "Claims").  Mt. Hawley later amended its complaint to add a third claim not part of its Motion for reimbursement of defense costs on Defendants' behalf.  *See* Plf. Motion, p. 6.

Based on at least these facts, and for the additional reasons set forth below, not only is Mt. Hawley unable to prevail on its motion, but Defendants have demonstrated that as a matter of undisputed fact they are entitled to coverage for defense and indemnity for the Claims, including but not limited to their attorneys' fees and costs expended in this matter. *See Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 21, 389 N.E.2d 1080, 1085 (1979*); Reliance Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.,* 262 A.D.2d 64, 66, 691 N.Y.S.2d 458, 460 (1999) and their progeny (an insured "is entitled to its reasonable costs in defending declaratory judgment action" where the insurer "cast it in a defensive posture.").  Accordingly, Mt. Hawley's Motion should be summarily denied, and the Defendants' Cross-Motion for Summary Judgment granted.

## STATEMENT OF MATERIAL FACTS

In or about September 2020, Defendants sought commercial property insurance coverage for properties owned, managed, and operated for rental to their clients. At the time, Defendants Mt. Hawley's managing general agent, Bass Underwriters, provided to Defendants a "Dwelling Supplemental Application" for filling out and submitting to Mt. Hawley's MGA.[2]  *See* Affirmation of Timothy E. Delahunt, Esq., dated May 30, 2024, in Support of Mt. Hawley's Motion for Summary Judgment  ("Delahunt Aff."), Ex. 8.  Mt. Hawley authorized its managing general agent, Bass Underwriters Inc., to take one of several actions on an application for coverage in *strictly* following Mt. Hawley's underwriting guidelines: (i) issue coverage to the prospective insured with Mt. Hawley, (ii) "submit" the application to Mt. Hawley for further review if the application sought coverage for "short term" rentals, *i.e.,* defined under Mt.  Hawley's underwriting guidelines as "12

---

[2] At all relevant times, Bass Underwriters ("Bass") served as Mt. Hawley's managing general agent with respect to insurance policies issued to Beach Cruiser. **See** Declaration of Jeffrey A Beer Jr., Esq. dated July 8, 2024 ("Beer Decl."), Exs. H; I at 13:4–14:21, 17:2–19:17; J at 30:2–32:12, 34:13–35:17.  To avoid duplication and for ease of reference for the Court, where possible, Defendants will cite to and incorporate herein the Delahunt Aff. And Beer Decl. and their exhibits.

months or less," or (iii) reject the application outright as ineligible for coverage if the application sought coverage for properties rented as an "Airbnb, VRBO, or similar online rental operations." See Pierantoni Aff., Exs. A, B, C.  At the time, Mt. Hawley had in place a pre-printed, form application that directly tied its questions to its underwriting guidelines, *explicitly* asking the applicant as to each unit whether it was an "Airbnb or similar," and further requested the applicant provide a "Yes" or "No" answer as to *each* unit whether they were rented on a "daily," "weekly," or "monthly" basis.  See Pierantoni Aff., Ex. C ("Mt. Hawley Application").

In September 2020, although Mt. Hawley's general agent could have provided Defendants with the Mt. Hawley application, it did not.  *See* Pierantoni Aff., Ex. B, 96:20-99:07.  Instead, Mt. Hawley's managing general agent provided the Defendants with a so-called "Dwelling Supplemental Application" that was created by an entirely different insurance company unaffiliated with Mt. Hawley, RSUI – A Berkshire Hathaway Company ("RSUI Application").  *Id.*  In contrast to the Mt. Hawley Application, the RSUI Application did not ask whether any of the Defendants' properties were "short term" rentals and did not ask the Defendants as to *each* of its properties or units whether they were "daily," "weekly," or "monthly" rentals.  *Id.*  Rather, the RSUI Application, Question 3., asked in two subparts for (i) the average monthly rent on various bedroom units, and (ii) whether "[a]ny properties rented by the day or by the week?"  *Id.*  In response to the RSUI Application's submission in September 2020, Mt. Hawley's managing general agent issued commercial liability property coverage with Mt. Hawley for Defendants' properties under Mt. Hawley Policy No.  GGL001932 for the period August 31, 2020 through August 31, 2021 ("Prior Policy").  Beer Decl., Ex. F.

One year later, in late 2021, Mt. Hawley's managing general agent renewed the 2020-2021 policy based on the originally signed 2020 RSUI Application for the August 31, 2021 through

August 31, 2022 policy year, *i.e.,* the insurance policy at issue in this matter: Mt. Hawley Policy No. GGL002606 ("Policy").  Beer Decl., Ex. E.

On February 2, 2022, the Defendants' broker, USI Insurance Services ("USI"), communicated by email with Mt. Hawley's managing general agent that it was seeking insurance coverage for some additional projects at their insured properties under the Policy, and reminded the agent that its properties had short term rentals.  Beer Decl., Exs. N; W at ¶ 16.  Specifically, USI stated to Mt. Hawley's managing agent, "Can you tell me information I would need to provide [Defendants] with a quote *for a property short term rentals I assume much like they have*…." (emphasis added).   This email exchange occurred during the period of coverage under the Policy, and approximately six (6) months **before** the underlying event that gave rise to the Claims arose. Beer Decl., Ex. N.

On or about July 23, 2022, two individuals renting one of the units insured under the Policy located at 146 President Street, Unit C, Charleston, South Carolina allege they were injured by a fall from a balcony at the premises ("Property").  Beer Decl., Exs. A, D.

On or about August 3, 2022, Defendants through their broker notified Mt. Hawley of the Claims and requested Mt. Hawley provide defense and indemnity coverage under the Policy pursuant to its terms and conditions.  Delahunt Aff., Ex. 13.

In August 2022, during Mt. Hawley's investigation of the Claims, Defendants again made known to Mt. Hawley that its insured properties under the Policy, including the Property, had short term rentals.  Beer Decl., Ex. O.

On or about September 8, 2022, after being made aware by Defendants of their short-term rentals in the RSUI Application submitted in 2020 and again submitted in 2021, through USI's email to its managing general agent on February 2, 2022, and again during its investigation of the

4

Claims in August 2022, Mt. Hawley billed and sent an invoice to Defendant Beach Cruiser for $59,148.00 as premium for renewal of the Policy for the August 31, 2022 – August 31, 2023 policy year ("Renewal Policy"). Beer Decl., Ex. R.

On or about September 28, 2022, Mt. Hawley accepted and cashed payment of the 2022-2023 premium from Defendants for the Renewal Policy with full knowledge of the short-term rental circumstances surrounding the Claims.  Beer Decl., Exs. R at 1; W at ¶ 18.

On November 14, 2022 – approximately three months after issuing Defendants the Renewal Policy -- Mt. Hawley reversed course and denied coverage, rescinding the Policy pursuant to New York Insurance Law § 3105, or alternatively to deny coverage for Beach Cruiser based on application of the Amended Conditions Endorsement to the Mt. Hawley Policy, on the basis of alleged "misrepresentations" in the RSUI Application.  Beer Decl., Ex. S.  The November 14, 2022 disclaimer did not, however, rescind the Prior Policy or Renewal Policy, or return the premium paid for the Prior Policy or the Policy due to alleged "misrepresentations" Mt. Hawley claims it was unaware of until its investigation in August 2022.  *Id.*

## PROCEDURAL HISTORY

On or about December 7, 2022, Mt. Hawley filed this action seeking a declaration under Federal Rule of Civil Procedure 57 and 28 U.S.C. section 2201 (i) that the Policy be rescinded under New York Insurance Law § 3105 based on Defendants' having allegedly made material misrepresentations in an underwriting application that Mt. Hawley's agent provided to Defendants; and (ii) that Mt. Hawley has no obligation to defend or indemnify the Defendants under the Policy's so-called "Amended Conditions Endorsement" for the underlying *Humphrey* Action and Slade Claim related to the July 23, 2022 incident.  *See* Doc. 1.[3]

---

[3] Citations to "Doc." are citations to the Court Docket and document number for this matter.

On March 6, 2023, the Court issued a consent order permitting Nationwide to intervene in the action as a defendant.  After Mt. Hawley's motion to obtain a default against the Defendants was denied due to Nationwide's intervention on Defendants' behalf, Defendants obtained counsel, Cooper, LLC, to also represent its interests in this action.  *See* Docs. 29, 32, 34-37, 39.

On March 27, 2023, Nationwide filed its answer (*see* Doc. 44), and on April 19, 2023, the undersigned filed a notice of appearance and a stipulation and proposed order setting aside Defendants' default and granting them leave to file an answer.  *See* Docs. 47-48. On April 21, 2023, the Court issued a text Order granting the proposed order. *See* Doc. 49.

On May 10, 2023, Defendants filed their Answer and Counterclaims seeking declaratory relief as to Mt. Hawley's duty to defend and indemnify the Defendants for the Claims under the Policy, and for breach of contract as to the Policy.  *See* Docs. 50, 52.

On September 11, 2023, the Court issued an Order dismissing Mt. Hawley's cause of action under New York Insurance Law § 3105 pursuant to the parties' Stipulation of Partial Dismissal under F.R.C.P. 41 (a)(1)(ii).  *See* Doc. 56.

Under this Court's February 22, 2024 and April 30, 2024 Orders, the parties move for summary judgment.  *See* Docs. 68, 70.

By its Cross-Motion and in opposition to Mt. Hawley's Motion, Mt. Hawley had and continues to have an obligation to defend and indemnify the Defendants for the Claims under the Policy, and is in breach of its obligations to the Defendants under the Policy, resulting in significant costs to the Defendants that are due, outstanding, and owed by Mt. Hawley, including the costs incurred by Defendants being forced to litigate this action.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[S]ummary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation"-- when "properly employed."  *In re Dana Corp.,* 574 F3d 129, 151 (2d Cir. 2009) (citation omitted).  Where, as here, the non-moving party points to conflicting, non-conclusory evidence concerning any material fact, summary judgment in favor of the movant is improper; the Court must draw all reasonable inferences in the nonmovant's favor, must assess the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," and cannot decide issues of credibility.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255-256 (1986); *see also, JSC Foreign Econ. Ass'n v. Int'l Dev. & Trade Servs., Inc.,* 386 F. Supp. 2d 461, 463 (S.D.N.Y. 2005); *Am. Cas. Co. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir. 1994).  Further, "[i]t is axiomatic ... that a court adjudicating a summary judgment motion 'must disregard all evidence favorable to the moving party that the jury is not required to believe' and 'give credence to the evidence favoring the nonmovant.'"  *Yu Zhang v Sabrina USA Inc.,* 18-CV-12332 (AJN), 2021 WL 1198932, at *3 [SDNY Mar. 30, 2021] (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).  "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."  *Wang v. Hearst Corp.,* 203 F. Supp. 3d 344, 349 (S.D.N.Y. 2016) (quoting *Curry v. City of Syracuse,* 316 F. 3d 324, 333 (2d Cir. 2003)).

As to cross-motions for summary judgment, "the [C]ourt must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Niram, Inc. v. Sterling Nat'l Bank,* No. 21-CV-5966 (MKV), 2023 WL 6394007, at *3 (S.D.N.Y. Sept. 29, 2023), *appeal withdrawn*, No. 23-7661,

2024 WL 1985513 (2d Cir. Apr. 10, 2024) (quoting *Dish Network Corp. v. Ace American Ins. Co.,* 21 F.4th 207, 212 (2d Cir. 2021); *see also, Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 486–87 (2d Cir. 2014) ("When both sides have moved for summary judgment, the court must apply the [summary judgment] principles to each motion separately. On each motion it must view the evidence in the light most favorable to the party against whom summary judgment is sought.").

## ARGUMENT

**A.  By Renewing the Policy After Defendants' Disclosure in the Application of the Existence of Short Term Rentals, Mt. Hawley Waived its Right to Invoke its Exclusion**

### 1.  *Mt. Hawley Deliberately Defined "Application" To Include Any Policy Related Information In Its Files*

The exclusionary endorsement that serves as the sole basis for Mt. Hawley's Motion defines the "Application" broadly to include information that was provided to the Defendants and its agent to Mt Hawley and its agent.  Given the endorsement's exclusionary intent, the probable reason for Mt. Hawley's decision to so broadly define "Application" was to expansively extend the exclusionary effect of its endorsement.  In this case, however, the principle of "what is good for the goose is good for the gander" applies, and because information beyond the preprinted RSUI Application form disclosed the existence of short term rentals to Mt. Hawley, Mt. Hawley has failed to demonstrate that its exclusion applies and likewise failed to meet its summary judgment burden.  As discovery in this action reveals, Defendants repeatedly notified Mt. Hawley and its agent of the fact they were engaged in short term rentals at the insured properties.  *See* Affirmation of Lindsay N. Nevin, dated July 8, 2024, in Support of Defendants' Cross-Motion and in Opposition to Defendants' Motion, ¶¶ 17; Beer Decl., Exs. N; W at ¶ 16; O.  In its so-called "Amended Conditions" endorsement, Mt. Hawley defined the "Application" to: "include[], without limitation, any application forms or other forms, documents, or information submitted to

8

us in connection with or relating to issuance of this policy." Delahunt Aff., Ex. 5. In addition to the disclosures in the 2020 and 2021 RSUI Application forms, as discovery in this action has revealed, information in Mt. Hawley's and its agent's files demonstrate that Defendants disclosed to, and Mt. Hawley was aware of, the existence of Defendants' short-term rentals. Such information includes (i) a February 2022 email from Defendants' broker expressly advising Mt. Hawley's agent of Defendants' "short term rentals;" and (ii) Mt. Hawley's claims files, which show that in August 2022 Defendants again reminded Mt. Hawley of Defendants' short term rentals.

In short, Defendants disclosed in the "Application" that Defendants' properties included short term rentals. Accordingly, by its very terms, Mt. Hawley's exclusion does not apply. For this same reason, Mt. Hawley's bald assertion that it would have never issued coverage to the Defendants had it known the properties it operated were short term rentals is simply false.

### 2.    The Endorsement Is An Exclusion, Not A Condition Precedent

In an effort to sidestep that its endorsement is simply an exclusion by another name, Mt. Hawley relies on inapposite case involving conditions precedent. Apparently aware that its endorsement does not meet the stringent requirements of a condition precedent, however, Mt. Hawley tellingly does not go so far as to expressly state that its endorsement acts as one. In fact, although Mt. Hawley not once mentions the phrase "condition precedent" in its papers, the case law central to its argument, including the unreported decisions in *National Builders*, *Liberato*, and *Van Cortland Village* all involve conditions precedent, rather than exclusions in an insurance policy.

In New York, an endorsement in an insurance policy that serves as an exclusion does not act as a condition precedent. *See Mt. Hawley Ins. Co. v. Adell Plastics, Inc.,* 348 F.Supp.3d 458 (2018)); *see also, Kinsale Insurance Co. v. CD Management of New Orleans, Inc.*, 677 F.Supp.3d 401 (2023) ("An exclusion operates to deny coverage under specific circumstances detailed in the

endorsement, whereas a condition precedent must be met for the policy itself to be effective or for coverage to apply. Therefore, an amended endorsement that functions as an exclusion is not a condition precedent.")

Mt. Hawley seeks to rewrite the terms of the exclusionary endorsement by citing to inapposite language from decisions concerning bilaterally drafted "conditions precedent" negotiated between sophisticated parties in financial instruments and leases, and by cases cited to that involve boilerplate insurance policies that—like here—were not negotiated between Mt. Hawley and its insureds, they are all inapplicable to the facts here. As to the latter, unlike the form "Conditions of Coverage" endorsements in *National Builders*, *Liberato,* and *Van Cortland Village* that expressly required the either "Insured warrants that it has obtained…; "Insured warrants that it has confirmed…; or that the "Insured will confirm…" to first perform a specific obligation before the insurer's obligations are triggered to issue coverage. *See Mt. Hawley Ins. Co. v. Liberato,* 2010 WL 2653326 at *2 (E.D.N.Y. 2010); *Mt. Hawley Ins. Co. v. National Builders, LLC,* 2009 WL 1919611, at *1 (S.D.N.Y. 2009); and *Mt. Hawley Ins. Co. v. Van Cortland Village LLC,* 2011 WL 5834255, at *7-8 (S.D.N.Y. 2011). By contrast, here Mt. Hawley's endorsement is utterly devoid of this language or what the New York Court of Appeals held to be the hallmarks of a condition precedent, i.e., "unless and until.":

> 'Generally speaking, New York respects a presumption that terms of a contract are covenants rather than conditions.' In order to rebut the presumption, the Second Circuit has recognized that '[w]hile specific, talismanic words are not required, the law nevertheless demands that conditions precedent be 'expressed in unmistakable language.'

*Nadav v. Beardwood & Co. LLC,* No. 17 CIV. 6465 (AKH), 2018 WL 11220833, at *3 (S.D.N.Y. Jan. 17, 2018) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,* 86 N.Y.2d 685, 690 (1995)). Consequently, unless an endorsement *explicitly* states that it is a condition precedent

10

by containing the hallmark language the Court of Appeals has ruled must appear, then the endorsement will be treated as a modification of or limitation to coverage, rather than an unmet "condition precedent" that can only serve to "vitiate" coverage.  As such, conditions precedent are specifically worded clauses that require a party first meet an obligation *before* the other party is obligated to perform as opposed to endorsements that generally serve to add, limit, or exclude coverage, ***but do not inherently establish a condition precedent unless explicitly stated as such***. *See U.S. Underwriters Ins. Co. v. Kum Gang, Inc.,* 443 F.Supp.2d 348 (2006).

Under New York law, treating the Amended Conditions Endorsement for what is – an exclusion – means that Mt. Hawley bears the burden of proving unequivocally that the exclusion applies to the Claims—a burden that Mt. Hawley has failed to even acknowledge, let alone meet. "It is well-settled that "exclusions from insurance policy coverage are given strict construction." *Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.,* 19 F.3d 78, 81 (2d Cir. 1994); *see also, State of N.Y. v. Blank,* 27 F.3d 783 (2d Cir. 1994). Policy exclusions are interpreted in a manner most beneficial to the insured, and it is the insurer that bears the burden of proving that the exclusion applies in clear and unmistakable language and is subject to no other reasonable interpretation. *See MH Lipiner & Son, Inc. v. Hanover Ins. Co.,* 869 F.2d 685, 687 (2d Cir. 1989); *Continental Casualty Co. v. Rapid–American Corp.,* 80 N.Y.2d 640, 652, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993).

The distinction between conditions precedent and exclusions is critical under insurance law since, as an exclusion, the carrier *first* acknowledges that the claim falls within a coverage grant *but for* the exclusion.  "This standard may be implicated even when an insurer relies on 'limiting language in the definition of coverage instead of 'language in the exclusions section of the policy' because, in some circumstances, that limiting language functions as an exclusion.  *See J.P. Morgan*

*Sec. Inc. v. Vigilant Ins. Co.,* 37 N.Y.3d 552, 562, 183 N.E.3d 443 (2021); *see also, Andover Newtown Theological Sch., Inc. v. Cont'l Cas. Co.,* 964 F.2d 1237, 1243 (1st Cir. 1992). Here, by trying to distribute the so-called "Amended Conditions Endorsement" within the section of the Policy titled "Conditions" instead of addressing it for what it is, an exclusion to coverage, Mt. Hawley is attempting to engage in what at least once circuit Court found to be an "incentive to obfuscation and subterfuge" *Andover,* 964 F.2d at 1243. In attempting to falsely label its exclusion as a condition, Mt. Hawley seeks to suggest that in the first instance the Claims did not even trigger or come within the purview of the Policy, thus allowing it to avoid its burden under New York law to prove that the Claims unambiguously fall within the scope of an exclusion. But Mt. Hawley's position that the endorsement "vitiates" coverage all the more reveals why Mt. Hawley's reliance on a condition precedent argument is unavailing – after all, if a condition for coverage was not met in the first instance, then Mt. Hawley would not have provided coverage for the Claims under reservation of rights.

### 3.    *Mt. Hawley Waived Enforcement of the Exclusionary Endorsement*

Just as Mt. Hawley's slapping a label "Amended Conditions Endorsement" to exclusionary language and stating it is part of the Policy's "Conditions" section does not make it so, doing so does not insulate Mt. Hawley from its having waived its right to enforce the exclusionary effect of the endorsement to bar coverage for the Claims. Mt. Hawley's attempt to exclude coverage for the Claims under its exclusionary endorsement is also belied by the undisputed fact Mt. Hawley renewed the Policy despite opportunities to cancel or rescind the Policy during the policy year, *i.e.,* after being informed by Defendants of their short term rentals in the September 2020 application, after Mt. Hawley's agent adopted the same 2020 application to issue the Policy in 2021, after being informed by Defendants through its broker in the February 2, 2022 email

exchange, and after being reminded again about the short term rentals during its August 2022 claims investigation.

Even were the Court to focus solely on Mt. Hawley's assertion that it purportedly "first learned" of Defendants short term rentals during its August 2022 investigation of the Claims (which the undisputed facts show it did not), Mt. Hawley's renewal of the Policy one month later by billing and cashing in a premium paid by Defendant Beach Cruiser for an additional one year term clearly constitutes an affirmative waiver of the exclusionary endorsement— *just as Mt. Hawley did by withdrawing its earlier New York Insurance Law § 3105 rescission claim for precisely the same reason*.  As such, by affirmatively choosing not to cancel or rescind the Policy at each of these instances, and especially after renewing the Policy, Mt. Hawley has waived enforcement of the exclusionary endorsement:

> 'In the insurance context, New York law defines waiver as a voluntary and intentional relinquishment of a known right.' And there is no question that New York law recognizes implied waiver of defenses to insurance coverage. 'While express waiver rests upon intention… implied waiver may rest upon either; for it exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances, or when there is no such intention in fact, but the conduct of the insurer has misled the insured into acting on a reasonable belief that the company has waived some provision of the policy.' Kiernan v. Dutchess Cty. Mut. Ins. Co., 150 N.Y. 190, 195, 44 N.E. 698 (1896). ***Therefore, "[a]n irrevocable waiver may be found where "the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to abandon or not to insist upon the particular defense afterward relied upon.'***

*Weintraub v. Great N. Ins. Co.,* 571 F. Supp. 3d 250, 264 (S.D.N.Y. 2021) ("*Weintraub*") (emphasis added) (citations omitted).  Waiver has occurred here by operation of New York law due to Mt. Hawley's and its agents' recognizing the validity of coverage throughout the 2020 through 2022 policy periods, during the nine months preceding its disclaimer coverage in November 2022 being informed by Defendants of the existence of short term rentals, and upon renewal of the Policy three months before issuing the disclaimer— the latter which has been to the

Defendants' detriment as it has incurred expenses in defending itself not only against the Claims, but this action. "A waiver cannot be inferred from its mere silence. It is not obliged to do or say any thing to make the forfeiture effectual. It may wait until claim is made under the policy, and then, in denial thereof, or in defense of a suit commenced therefor, allege the forfeiture. ***But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as matter of law waived***…." *Weintraub*, 571 F. Supp. 3d at 264 (quoting *Titus v. Glens Falls Ins. Co.,* 81 N.Y. 410, 419 (1880)).

**B.    Defendants Made No Misrepresentation In Response To An Ambiguous Question**

   *1.    Defendants' Answer to Question Three Was Reasonable from Its Perspective*

Defendants' answers to both subparts of Question 3, when read together, were reasonable in light of its ambiguity as to what constituted "short term" rentals. Based on its underwriting guidelines provided to its managing general agent issuing coverage to Defendants, Mt. Hawley expressly defined "short term" in its underwriting guidelines as "12 months or less." *See* Delahunt Aff., Ex. 12, at MH0061. The Mt. Hawley Application tracks the precise language of its underwriting guidelines by ensuring that if the answer given to its managing general agent confirmed there were short term rentals at the properties to be insured, they were to be "submitted" to Mt. Hawley for further investigation. If the information provided to its agent confirmed the short term rentals were "Airbnb, VRBO, or similar online operations" then the properties were deemed "ineligible" for coverage. Remarkably, nowhere in the RSUI Application used by Mt. Hawley's managing general agent does it ask an applicant whether properties are being rented "short term," "Airbnb," "Vrbo," or "online rental operations"—all the precise terms and distinctions made in Mt. Hawley's

14

underwriting guidelines for purposes of having its agent either submit the application for further review or reject as ineligible outright.

| Mt. Hawley Application Question | Corresponding RSUI Application Question |
|---|---|
| **LOCATION INFORMATION**<br><br>Loc. 1        Loc. 2        Loc. 3<br><br>Airbnb or similar    ☐ Yes  ☐ No  ☐ Yes  ☐ No  ☐ Yes  ☐ No | **[NOT ASKED]** |
| Number of units rented   Daily:<br>Weekly:<br>Monthly: | **[NOT ASKED]** |

*See* Pierantoni Aff., Ex. C.  When asked why it did not use the Mt. Hawley application, especially given the importance it placed on the use of terms that dictate submissions for further view or rejection, Bass had no explanation other than "not specifically."  *See* Pierantoni Aff., Ex. A, 26:17-20.  Moreover, because Defendants rented nearly all of their units and properties on a yearly or monthly basis, with only a handful of units (approximately three) on a mixed bag yearly, monthly, and occasional overnight/weekly stays, they gave "No" as their best possible answer to a question viewed conflicting with their answer to the first subpart of Question 3, and thus subject to multiple, reasonable interpretations in the context of their business model.  Beer Decl., Ex. W.

Incredibly, rather than place the blame on its managing general agent, Mt. Hawley instead sees fit to impose on Defendants the same obligations it required of an experienced underwriter and managing general agent by asserting that Defendants – small business operations having zero sophistication in insurance or risk assessment – should have known about its risk assessment of the properties without as much as even asking a single question about the very risk it sought to

15

cover, *i.e.,* "Airbnb," "Vrbo," or "short term."   Mr Nevin, Defendants' member authorized to testify on their behalf in this matter, states: "Had Question 3 permitted us to expand on our limited "Yes" or "No" options in the same manner as Questions 2, 7, 15, 16, 20, and 21 did, or asked clearer questions in the way Mt. Hawley's form application provided, we clearly would have explained our "No" answer as we never hid from Mt. Hawley or its managing agent our short term rental format."   Put bluntly, if Mt. Hawley has any complaint as a result of, as it claims, not being aware of information evidencing Defendants' short term rentals, then it is for Mt. Hawley to look to its managing general agent, Bass Underwriters, for recompense-- not the Defendants.

### 2.    Question Three Is Ambiguous As A Matter of Law

Even if this Court were somehow convinced by Mt. Hawley that the Defendants made misrepresentations in answering Question 3, they could not possibly be declared material because the two part question is ambiguous.  As such, any response the Defendants give must be interpreted in favor of coverage under New York insurance law.   "The Second Circuit has held that if an insurance company drafted ambiguous questions on an application form, the ambiguity is 'to be resolved against the company in determining whether the answers are false.'  That, of course, is simply a corollary to the settled rule that ambiguities in a contract are construed against the drafter of the contract.'"  *GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroel,* 381 F. Supp. 2d 267, 274 (S.D.N.Y. 2005) (citing and quoting *Brayer v. John Hancock Mut. Life Ins. Co.,* 179 F.2d 925, 928 (2d Cir. 1950).[4]   As such, the principle that an insurance policy or application ambiguities should be construed against the insurer, *i.e.,* the sole drafter of the policy contract, is well established in New York jurisprudence.  *See, e.g., Garcia v. American General Life Ins. Co.*

---

[4] For purposes of applying New York substantive law pertaining to insurance policy ambiguity, Mt. Hawley's Policy expressly states that "For Purposes of this endorsement, the Application(s) is part of this policy and is incorporated herein."  Plfs Brief, p. 11; Delahunt Aff., Ex. 5.

*of New York,* 264 A.D.2d 808 (1999) ("*Garcia*") ("Whether or not a contract provision is ambiguous is a question of law to be resolved by a court… [and an] answer to an ambiguous question on an application for insurance cannot be the basis of a claim of misrepresentation by the insurance company against its insured where, as here, a reasonable person in the insured's position could rationally have interpreted the question as he or she did"); 22 N.Y. Jur. 2d, Contracts, S 259, at 321.  As such, "***[a]n insurer is held to a strict standard when it is endeavoring to avoid payment on its insurance contract because of answers to inquiries or declarations which it has framed***." *Fanger v. Manhattan Life Ins. Co. of New York, N.Y.,* 273 A.D.2d 438, 439, 709 N.Y.S.2d 622, 624 (2000) (emphasis added).

For example, in *Garcia*, where the Court granted the insured summary judgment, the insurer argued that the insured made a misrepresentation in answering a question in an insurance application.  Specifically, the insured was asked: "In the last 90 days, has the Proposed Insured worked at least 17½ hours each week performing all duties of his/her regular occupation at his/her regular place of employment? Normal vacation is a work day."  In response, the insured answered "Yes" to the question even though he took "two sick days and three vacation days" during the 90-day period. Under this circumstance, the Court granted the insured summary judgment as his answer was "truthful under a reasonable construction thereof" due, in part, to the insured's company testimony that "an absence from work qualified as 'a normal vacation day' if it was recorded as a vacation day on the employer's attendance log."  In short, taken from the perspective of a reasonable insured, the Court held that even though the question specifically defined a "normal vacation" as a "workday," the insured nonetheless did not make a misrepresentation by failing to make the distinction between a sick day and a vacation day because – as am internal company matter – there was no distinction between the two if recorded as a "normal vacation day." *Garcia,*

264 A.D.2d at 809, 695 N.Y.S.2d at 421.  Here, as in *Garcia*, Defendants provided a reasonably

accurate—but not 100% accurate—response to the question as to whether any rentals were by the

month, week, or day given (a) well over 90% of its unit and property rentals were monthly and

stated it rented units monthly in part one of Question 3, and (b) believed it was providing Mt.

Hawley with a reasonably accurate response when it stated it did not rent any units daily (which it

did not), with only three units out of 30 rented—only on occasion—weekly and overnight, in

responding to the second part of Question 3.

Indeed, even where there *is* room for the insured's explanation of its answer on an insurance

application, where there is no guidance provided by the insurer to the insured on how to fill in any

remarks—as is the case here with the Application—it is of no aid to the insurer's assertion that

there was a misrepresentation:

> All but one page of the pre-printed application—including the page on which the
> sections "Applicant Information" and "Premises Information" appear—have at the
> bottom a box labeled "Remarks," containing blank space into which (presumably)
> additional information can be inserted. There are no instructions on how to fill out
> the "Remarks" boxes or to what they pertain. On all pages, including the page at
> issue here, the "Remarks" box is left blank.

*GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroel*, 381 F. Supp. 2d 267, 271

(S.D.N.Y. 2005) ("*GuideOne*") ("Contract language is unambiguous 'when it has a definite and

precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and

concerning which there is no reasonable basis for a difference of opinion.'" (citing *Care Travel

Co., Ltd. v. Pan American World Airways, Inc.,* 944 F.2d 983, 988 (2d Cir.1991).  In a case

involving a business application for commercial property insurance, this Court in *GuideOne* found

ambiguous not only the failure of the application to specify whether the [insured business] interest

is to be in the location, or the building found at the location, or both," but further went on to hold

that "[t]he application had a box where the insured was to specify its interest in the Premises. The

applicant had two choices: she could check off either "owner" or "tenant."  There was no space in the "Premises Information" portion of the application to provide additional information about ownership interests in the property to be insured, and as noted above, the "Remarks" section does not specify what sort of remarks are to be inserted therein…. Since the Congregation owned the building to be insured, it was rational for the Congregation to classify its insurable interest as one of ownership." *GuideOne,* 381 F. Supp. 2d at 274–75.  Perhaps more relevant to the Application at issue here, the *GuideOne* court went on to rule that "[i]f anything, ***the question on the application regarding the insured's 'interest' in the premises to be covered was overly simplistic, which made it ambiguous.***" *GuideOne*, 381 F. Supp. 2d at 275 (emphasis added)

Similarly, in *Fanger*, plaintiff's cross-motion for summary judgment was granted in favor of coverage where an insurer denied death benefits under its policy on the basis that the policyholder made material misrepresentations in the application by failing to disclose he received "psychiatric treatment for mild obsessive-compulsive disorder."  Specifically, the insurer denied coverage because the deceased insured did not disclose this treatment in response to (i) a subpart whether "the applicant had ever been treated for 'Any other disorder, injury or impairment'" from a series of questions asking about "physical disorders" and (ii) a question which asked, "Have you had any health examinations or check-ups in the past five years?"  However, in holding for the insured's beneficiary, the Court found these questions "were not 'so plain and intelligible that any applicant can readily comprehend' that they sought disclosure of the condition involved in this case and the treatment therefor."  *Fanger*, 273 A.D.2d at 438-439, 709 N.Y.S.2d at 623-624.  As is the case here, there is no way for the Defendants to reasonably make the connection between the second subpart to Question 3 and the risk Mt. Hawley specifically required its MGA to address, *i.e.,* short term rentals, Airbnbs, Vrbos— a risk that only made it more difficult if not impossible

to address by using an application that was not Mt. Hawley's, but rather than of another insurer unaffiliate and unrelated to Mt. Hawley.

>**3.**    ***Even If Question Three Is Unambiguous, There Is No Material Nexus To The Risk***

Even were the Court to find Question 3 unambiguous, the questions asked do not make a material nexus between the information sought and the risk covered— here, the claims of bodily injuries from a fall due to a defective balcony rail condition that would have occurred regardless of whether the Property was rented on a long or short term basis, *i.e.,* a daily, monthly or even yearly basis.  To be sure, Mt. Hawley tacitly concedes the requirement of materiality—a requirement that has been at the heart of any commercial transaction under New York law for hundreds of years—by virtue of adding the modifier "materially" to the same "Amended Conditions Endorsement" in at least two other cases— one of which is on file before this Court. *Mt. Hawley Insurance Company v. Disciple Security Services, Inc.,* Case No 1:24-cv-3727 (S.D.N.Y. May 15, 2024).  Moreover, not even New York Insurance Law § 3105, by which Mt. Hawley initially sought rescission of the Policy, but later withdrew with prejudice, goes as far as this endorsement by completely ignoring the requirement that there be a materiality nexus between an insured's representation and acceptance of the risk being covered:  "It is well settled under New York law, which governs in this diversity action, that even an innocent misrepresentation, ***if material,*** is sufficient to allow the insurer to avoid a contract of insurance."  *Berger v. Manhattan Life Ins. Co.,* 805 F. Supp. 1097, 1102 (S.D.N.Y. 1992) (emphasis added).

**C.**    **Mt. Hawley's Exclusionary Endorsement, If Enforced As Written, Would Violate Public Policy and Render Coverage Illusory Under New York  Law**

Given that the exclusionary endorsement—as written—fails to take into account the materiality nexus between the information provided and the risk covered, if enforced, there is no limit to whatever innocent statement a Mt. Hawley policyholder might make that Mt. Hawley can

use to deny coverage.  Whether it is a miscalculation of the "average monthly rent," an incomplete description of an outdoor jungle gym, an inaccurate measurement of an appliance, or a typographical error made in referencing a building code violation— all would serve as the basis for Mt. Hawley to unreasonably deny coverage such that it renders their insurance policies illusory in contravention of New York law.  This aligns with the principle that an insurance agreement that is illusory in contravention of an insured's expectation based on policy terms, is void and unenforceable under New York law.  *See, e.g., Admiral Ins. Co. v. Grace Industries, Inc.*, 409 B.R. 275 (2009)).  Accordingly, under New York law and as a matter of public policy, this Court should not grant summary judgment as it would be license for Mt. Hawley to permit the endorsement to swallow up the policy, have Mt. Hawley unreasonably and arbitrarily deny coverage to many of its insureds so as to render their policies illusory in violation of New York law.

### D.    New York Insurance Law § 3105 Prohibits Mt. Hawley From Avoiding Its Coverage Obligations To Defendants and Cannot Sustain Its Burden for Rescission or Defeating Coverage Under Insurance Law § 3105

Given the overlapping interests of Nationwide and the Defendants in this matter, and in support of Defendants' Cross-Motion and in opposition to Mt. Hawley's Motion, Defendants incorporate and adopt the facts and arguments made in the Memorandum Of Law In Support Of Nationwide's Motion For Summary Judgment And In Opposition To Mt. Hawley's Motion For Summary Judgment contemporaneously filed with the Court.

*                    *                    *

Not only have Defendants met their burden to show there are specific, material facts evidencing the existence of genuine issues for trial, but have produced a counter statement of facts that prove Defendants are entitled to coverage for defense and indemnity for the Claims, including but not limited to the attorneys' fees and costs expended by the Defendants in this matter. *See Mighty*

*Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 21, 389 N.E.2d 1080, 1085 (1979*); Reliance Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.,* 262 A.D.2d 64, 66, 691 N.Y.S.2d 458, 460 (1999) and their progeny (an insured "is entitled to its reasonable costs in defending declaratory judgment action" where the insurer "cast it in a defensive posture.").

### CONCLUSION

For the reasons stated above, the Court should grant Defendants' motion for summary judgment and deny Plaintiff Mt. Hawley's motion for summary judgment.

Dated:   July 8, 2024                                    **COOPER, LLC – COUNSELORS AT LAW**

                                                         */s/Renier P. Pierantoni*
                                                         Renier P. Pierantoni (RP9540)
                                                         1345 Avenue of the Americas - Second Floor
                                                         New York, New York 10105
                                                         Tel: 212.878.3636
                                                         Email: renier@cooperllc.com

                                                         *Attorneys for Defendants Beach Cruiser, LLC
                                                         and Flyway Management, LLC*