UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
====================================

MT. HAWLEY INSURANCE COMPANY,

                Plaintiff,

                                      Civ. Action No.:
                                      1:22-cv-10354-GHW

v.

BEACH CRUISER, LLC and
FLYWAY MANAGEMENT, LLC,

                Defendants,

and

NATIONWIDE GENERAL
INSURANCE COMPANY,

                Intervenor Defendant.

====================================

 

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MT. HAWLEY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANTS'
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

1. Nationwide Wholly Mischaracterizes the Nature of the Action as a New York Insurance Law Section 3105 Rescission Action .......................................................2

    A.    This Is Not an Action for Rescission and Insurance Law Section 3105 Does Not Preempt the Amended Conditions Endorsement ..................................2

    B.    Nationwide's Mislabeled "Materiality" Argument ......................................8

    C.    Nationwide's "Ratification" and Timeliness Arguments .........................14

        i.    Beach Cruiser Sought Renewal of the Mt. Hawley Policy After Submitting an Uncovered Claim Under the Same Policy........14

        ii.    "Ratification" .........................................................................16

        iii.    Timeliness ...............................................................................19

2. Beach Cruiser and Flyway's Unsupportable Factual and Legal Contentions............

    A.    The Question at Issue is Unambiguous as a Matter of Law; Beach Cruiser's Misrepresentation is Equally Unambiguous .............................................21

    B.    The Railing Defect is Irrelevant and Immaterial .......................................28

    C.    Beach Cruiser's Immaterial and Unsupported Contentions of Fact ..........30

CONCLUSION ......................................................................................................... 33

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

<u>463 Saddle Up Tremont LLC v. Union Mutual Fire Ins. Co.</u>
205 A.D.3d 511 (1st Dept. 2022)...........................................................................17

<u>866 East 164th Street, LLC v. Union Mutual Fire Ins. Co.</u>
16-CV-03678 (SN), 2017 WL 4444334 (S.D.N.Y. October 3, 2017)........................10, 11

<u>Albert J. Schiff Associates, Inc. v. Flack</u>
51 N.Y.2d 692 (1980) ...........................................................................................29

<u>Alexi Home Design, Inc. v. Union Mutual Fire Ins. Co.</u>
223 A.D.3d 449 (1st Dept. 2024)...........................................................................16

<u>Amro Realty Corp. v. Zurich Ins. Co.</u>
936 F.2d 1420 (2d Cir. 1991).............................................................................18, 20

<u>Ballow Brasted O'Brien & Rusin P.C. v. Logan</u>
435 F.3f 235 (2d Cir. 2006) ..................................................................................19

<u>Banque Arabe Et Internationale D'Investissement v. Maryland National Bank</u>
850 F. Supp. 1199 (S.D.N.Y. 1994)........................................................................17

<u>Bazzicalupo v. Nationwide Ins. Co.</u>
05 CIV. 5127(MDF), 2006 WL 1310369 (S.D.N.Y. May 11, 2006) ...............................11

<u>Bleecker Street Health & Beauty Aids, Inc. v. Granite State Ins. Co.</u>
38 A.D.3d 231 (1st Dept. 2007)..............................................................................28

<u>Chicago Ins. Co. v. Fasciana</u>
No. 04 Civ. 7934(LAP), 2006 WL 3714310 (S.D.N.Y, December 13, 2006) .................19

<u>Chicago Ins. Co. v. Halcond</u>, 49 F. Supp. 2d 312 (S.D.N.Y. 1999) ……………………….. 6

<u>Chicago Ins. Co. v. Kreitzer & Vogelman</u>
265 F. Supp. 2d 335 (S.D.N.Y. 2003).................................................................19, 31

<u>CIFG Assurance North America, Inc. v. J.P. Morgan Securities LLC</u>
146 A.D.3d 60 (1st Dept. 2016)...............................................................................2

<u>Continental Casualty Co. v. Marshall Granger & Co., LLP</u>
6 F. Supp. 3d (S.D.N.Y. 2014).........................................................................16, 17, 20

Coregis Ins. Co. v. Lewis, Johs, Avallone, Aviles and Kaufman, LLP
No. 01 CV 3844, 2006 WL 2135782 (E.D.N.Y. July 28, 2006) ..................................6, 12

Courtney v. Nationwide Mut. Fire Ins. Co.
179 F. Supp. 2d 8 (N.D.N.Y. 2001)..................................................................11

Falls Lake National Ins. Co. v. Nexus Builders Corp.
No. 21-CV-1403 (RA), 2024 WL 708194 (S.D.N.Y. February 21, 2024) .............9, 10, 11

Fanger v. Manhattan Life Ins. Co. of New York, N.Y.
273 A.D.2d 438 (2d Dept. 2000) ...................................................................27

Garcia v. American General Life Ins. Co. of New York
264 A.D.2d 808 (2d Dept. 1999) ...................................................................27

Gentile v. Continental American Life Ins. Co.
215 A.D.2d 626 (2d Dept. 1995) ...................................................................28

Gluck v Executive Risk Indemnity, Inc.
680 F. Supp. 2d 406 (E.D.N.Y 2010) ........................................................4, 5, 6, 12

Great American Ins. Co. v. Zelik
19-cv-1805 (JSR), 2020 WL 85102 (S.D.N.Y. January 6, 2020)......................................6

GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim
593 F. Supp. 2d 471 (E.D.N.Y. 2009) ..........................................................3, 4, 7, 16, 17

GuideOne Specialty Mutual Ins. Co. v. Congregation Bais Yisroel
381 F. Supp. 2d 267 (S.D.N.Y. 2005)................................................................26

Hall v. Mountain Valley Indemnity Co.
2024 WL 2943747 (S.D.N.Y. June 10, 2024) ....................................................32

Jackson v. The Travelers Ins. Co.
113 F.3d 367 (2d Cir. 1997)..........................................................................28

John Hancock Life Ins. Co. v. Perchikov
553 F. Supp. 2d 229 (E.D.N.Y. 2008) ..............................................................32

Keyspan Gas East Corp. v. Munich Reinsurance America, Inc.
23 N.Y.3d 583 (2014)................................................................................20

Koczwara v. Nationwide General Ins. Co.
20-CV-2579 (BCM), 2022 WL 1471121 (S.D.N.Y. May 10, 2022)..................................8

<u>Lang v. Hanover Ins. Co.</u>
3 N.Y.3d 350 (2004) .......................................................................................15, 20

<u>Luria Brothers & Co., Inc. v. Alliance Assurance Co., Ltd.</u>
780 F.2d 1082 (2d Cir. 1986) ……………………………………………………18

<u>Mighty Midgets, Inc. v. Centennial Ins. Co.</u>
47 N.Y. 12 (1979) .....................................................................................................30

<u>Nationwide Mutual Fire Ins. Co. v. Pascarella</u>
993 F. Supp. 134 (N.D.N.Y. 1998) ........................................................................11

<u>National Union Fire Ins. Co. of Pittsburgh, PA v. PVT Limited</u>
338 F.R.D. 579 (S.D.N.Y. 2021) ...........................................................................28

<u>Northwestern Mutual Life Ins. Co. v. Buffalino</u>
1991 WL 183350 (S.D.N.Y. September 10, 1991).................................................28

<u>Precision Auto Accessories, Inc. v. Utica First Ins. Co.</u>
52 A.D.3d 1198 (4th Dept. 2008) ...........................................................19, 20, 28

<u>Precision Auto Accessories, Inc. v. Utica First Ins. Co.</u>
52 A.D.3d 1158 (4th Dept. 2008), <u>lv. den.</u>, 11 N.Y.3d 709 (2008)............................20, 29

<u>Principal Life Ins. Co. v. The Locker Group</u>
869 F. Supp. 2d 359 (E.D.N.Y, 2012) ...........................................16, 17, 20, 28

<u>Royal Indemnity Co. v. Patel</u>
5:03-CV-999, 2005 WL 2573514 (N.D.N.Y. October 13, 2005).....................................11

<u>Savva's Restaurant, Inc.</u>
No. 22-08041-reg, 2023 WL 6165319 (Bankr. E.D.N.Y. September 21, 2023)...10, 11, 28

<u>Scalia v. Equitable Life Assurance Society of the United States</u>
251 A.D. 315 (2d Dept. 1998) ...............................................................................17

<u>Schondorf v. SMA Life Assurance Co.</u>
745 F. Supp. 866 (E.D.N.Y. 1990) .......................................................................28

<u>Scottsdale Ins. Co. v. Priscilla Properties, LLC</u>
254 F. Supp. 3d (E.D.N.Y. 2017) ..........................................................................10

<u>Security Mutual Ins. Co. v. Perkins</u>
86 A.D.3d 702 (3d Dept. 2011) .............................................................................28

<u>Sompo Japan Ins. Co. v. Norfolk Southern Railway Co.</u>
762 F.3d 165 (2d Cir. 2014)....................................................................................17

<u>Travelers Casualty & Surety Co. of America v. Gold, Scollar, Moshan, PLLC</u>
14cv10106 (DF), 2018 WL 1508573 (S.D.N.Y. March 14, 2018)......................................6

<u>Union Mut. Fire Ins. Co. v. OHR Makif LLC</u>
22-CV-2025 (JPO), 2023 WL 5576877 (S.D.N.Y. August 29, 2023).............10, 11, 28, 31

<u>Union Mutual Fire Ins. Co. v. 142 Driggs LLC</u>
2023 WL 9232956 (E.D.N.Y. December 11, 2023) .........................................................29

<u>United States Liability Ins. Co. v. WW Trading Co., Inc.</u>
813 Fed. Appx. 636 (2d Cir. 2020).................................................................................18, 19

<u>U.S. Liability Ins. Co. v. Trance Nite Club, Inc.</u>
2007 WL 2782714 (E.D.N.Y. September 24, 2007) ....................................................11, 28

<u>U.S. Underwriters Ins. Co. v. 14-33/35 Astoria Boulevard</u>
No. 10–CV–1595 (ARR)(JMA), 2014 WL 1653199 (E.D.N.Y. April 23, 2014) .......10, 11

<u>U.S. Underwriters Ins. Co. v. Novel Home Health Care Services of New York, Corp.</u>
14-CV-3715 (ARR)(CLP), 2016 WL 5339358 (E.D.N.Y. January 14, 2016)............10, 11

<u>Vermont Mut. Ins. Co. v. Moslem</u>
No. 07 CIV. 7962(SAS); 2011 WL 2893627 (S.D.N.Y. July 14, 2011) ..........................11

<u>Waters v. New York Property Insurance Underwriting Association</u>
9 Misc. 3d 1126(A), 2005 WL 2934822 (Sup. Ct. New York Co. 2005)......................6, 12

<u>XL Specialty Ins. Co. v. Level Global Investors, L.P.</u>
874 F. Supp. 2d 263 (S.D.N.Y. 2012)...........................................................................7, 12

**<u>Statutes</u>**

New York Insurance Law section 3105 …………………………………….... *passim*

Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley") submits this memorandum of law in further support of its motion for summary judgment declaring that it has no duty to defend or indemnify defendants Beach Cruiser, LLC ("Beach Cruiser") and Flyway Management, LLC ("Flyway") in connection with the underlying alleged accident at issue and the claims/suits arising from the alleged accident.  Mt. Hawley also submits the memorandum in opposition to Beach Cruiser and Flyway's motion for summary judgment, as well as in opposition to the motion for summary judgment by intervenor defendant Nationwide General Insurance Company ("Nationwide").

As set forth below, Beach Cruiser, Flyway, and Nationwide's motions are based on immaterial facts that would be disputed if they were material.  They are not proper motions for summary judgment.  In opposition to Mt. Hawley's properly supported motion, Beach Cruiser, Flyway, and Nationwide also wholly disregard the nature of the action, and instead brief a case not before the Court.  Their arguments also all share the common theme of trying to outrun Beach Cruiser's indisputable misrepresentation by blaming Mt. Hawley for it.  Respectfully, Mt. Hawley's motion must be granted.  Defendants' motions must be denied.

Beach Cruiser/Flyway and Nationwide have submitted separate briefs even though Nationwide's intervention in the action did not alter the issues as between Mt. Hawley and Beach Cruiser/Flyway in any manner.  As such, Mt. Hawley must separately address the defendants' arguments even though the material facts and the legal issues are exactly the same between Beach Cruiser, Flyway, and Nationwide.  Mt. Hawley generally addresses Nationwide's arguments first, then addresses Beach Cruiser and Flyway's arguments.

1. **Nationwide Wholly Mischaracterizes the Nature of the Action as a New York Insurance Law Section 3105 Rescission Action**

   A. **This Is Not an Action for Recission and Insurance Law Section 3105 Does Not Preempt the Amended Conditions Endorsement**

   Nationwide's arguments are predicated on the assertion that New York Insurance Law section 3105 applies to both policy rescissions and denials of coverage with respect to particular claims where the rescission or denial is based on a misrepresentation.  Nationwide's arguments are also predicated on the assumption that section 3105 preempts policy language directed to misrepresentations such as the Amended Conditions Endorsement.  Nationwide's stated objective in making these arguments is to impose the materiality requirement under section 3105 in this action.  Mt. Hawley addresses materiality further below.  First, however, Mt. Hawley addresses the errors in Nationwide's framing of the action.  As set forth below, Mt. Hawley's coverage disclaimer pursuant to the Amended Conditions Endorsement is outside the scope of section 3105.  The validity of Mt. Hawley's disclaimer pursuant to the endorsement must be determined based solely on the language of the endorsement and the material facts, not the requirements of section 3105, which do not apply to the endorsement.

   Section 3105 is a codification of the common law with respect to material misrepresentations in an application for insurance.  See CIFG Assurance North America, Inc. v. J.P. Morgan Securities LLC, 146 A.D.3d 60 (1st Dept. 2016).  Section 3105 permits insurers to seek to rescind policies based on misrepresentations in an application even if there is no policy language addressed to misrepresentations in the application for the policy.  However, the fact that section 3105 provides insurers with redress for misrepresentations in the absence of policy language addressed to misrepresentations does not speak to whether policies can include language directed to the effect of misrepresentations.  They can and do.

A starting point is <u>GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim</u>, 593 F. Supp. 2d 471 (E.D.N.Y. 2009).  In that action, the Court determined that insurer GuideOne had waived its right to seek rescission under section 3105 by continuing to accept premiums after it had sufficient knowledge of the insured's misrepresentations.  In response, GuideOne argued that even if it was not permitted to rescind the policy *ab initio*, it was still entitled under section 3105 to deny defense and indemnification of the particular claim at issue based on the same misrepresentations.  The Court disagreed:

> To be sure, an insurer is empowered by New York law to disclaim coverage for particular occurrences without having to establish its right to rescind or to invalidate the entire contract. Generally, these actions are linked to particular provisions in the contract, such as a policy exclusion or a timely notice and cooperation clause. *See, e.g., North Country Ins. Co. v. Tucker,* 273 A.D.2d 683, 684, 709 N.Y.S.2d 255, 257 (3d Dep't 2000); *see also Harary v. Allstate Ins. Co.,* 988 F.Supp. 93, 102 (E.D.N.Y.1997). GuideOne has cited no case allowing an insurer, all the while collecting premiums and electing to keep its policy in effect until its established expiration date, to disclaim coverage for a particular occurrence falling under that policy on the basis of the insured's misrepresentations during contract formation. Where an insurer complains solely about misrepresentations during contract formation, as GuideOne does here, New York law arms the insurer only with the hatchet of rescission and not the scalpel of unilateral modification. By its inconsistent conduct, GuideOne has forfeited its right to the hatchet—its only weapon under § 3105(b). Lacking a scalpel and having surrendered the hatchet, GuideOne stands without means to avoid its contractual obligations, and since there is no triable issue of material fact presented about that, judgment must be, and hereby is, for defendants.

<u>Id.</u> at 486 (all text effects in original; footnotes omitted).

This passage is in conflict with Nationwide's contention that an insurer can rely on section 3105 not only to rescind a policy *ab initio*, but also to rescind coverage for a single claim. However, any potential question of law with respect to that particular issue is immaterial to this action.  The material point here is the <u>Adas Yereim</u> Court's recognition that an insurer can base a

denial of coverage for a particular claim on policy language.  That is, irrespective of section 3105, if an insurer has policy language addressed to misrepresentations, it is entitled to apply that language in denying coverage for a specific claim based on the insured's misrepresentations.  At bottom, it is a matter of freedom of contract.  An insurer without policy language addressing misrepresentations can still rely on the common law applicable to inducement of the contract (as codified by section 3105) to rescind a policy.  However, where the policy itself contains language addressing misrepresentations, the matter is one of enforcement of the contract, not common-law principles applicable to inducement and formation.

All of this is observed in the above-cited passage in <u>Adas Yereim</u> (regardless of whether that decision is correct or incorrect on whether section 3105 is limited to policy rescissions).  The decision states:  "By its inconsistent conduct, GuideOne has forfeited its right to the hatchet—its only weapon **under § 3105(b)**.  **Lacking a scalpel** and having surrendered the hatchet, GuideOne stands **without means** to avoid its contractual obligations."  <u>Id.</u> (emphasis supplied).  Here, Mt. Hawley's disclaimer is not premised on section 3105; it is not "under" the statute.  Instead, Mt. Hawley's disclaimer is based on the language in the contract itself (the missing "scalpel" in <u>Adas Yereim</u>'s parlance).  Here, Mt. Hawley, unlike GuideOne, does have the contractual "means" to disclaim coverage based on Beach Cruiser's misrepresentations.[1]

 <u>Adas Yereim's</u> acknowledgment that insurers can rely on policy language to disclaim coverage based on misrepresentations irrespective of section 3105 is entirely consistent with New York law.

A decision that is legally on all fours with this action is <u>Gluck v Executive Risk Indemnity,</u>

---

[1]    Footnote 13 in <u>Adas Yereim</u> amplifies the point, as the Court therein again observes that the result in that case could have been different had the GuideOne policy contained policy language to support a claim-specific disclaimer.

Inc., 680 F. Supp. 2d 406 (E.D.N.Y 2010).  In <u>Gluck</u>, the insured made misrepresentations in its application regarding whether the insured's tax-exempt status had been challenged.  A policy provision excluded coverage for claims arising from a fact not disclosed in the policy application. Multiple lawsuits arose from a challenge to the insured's tax-exempt status.  The insurer denied coverage based on the policy language excluding coverage for claims arising from failures to disclose in the application.  As in this case, the insurer sought to be relieved from coverage based on policy provisions, not section 3105.  The insured, like Nationwide, attempted to make the case turn instead on an analysis under section 3105.  The Court rejected this.

> Defendant is not trying to avoid, i.e., rescind the insurance policy at issue here, but plaintiffs believe that defendant is also prohibited from "defeating [their] recovery" under the policy unless their misrepresentation was material.
>
> Defendant, however, is correct that the materiality inquiry appears to have no place in a determination of whether or not a particular exclusion applies. Instead, an insurer in defendant's situation has two separate affirmative defenses available to it: first, that a particular exclusion serves to bar the claim at issue (as defendant is claiming); and second, that a material misrepresentation should allow the insurer to avoid paying entirely on a contract (which defendant is not claiming). To be sure, the language of the statute, that no misrepresentation should "defeat recovery" unless it is material, might be interpreted to apply both in rescission cases and in determining whether recovery under a particular contract is possible. However, this language should not be read to extend a materiality requirement to contractual exclusions, because excluded claims are, by prior agreement, not part of the insurance contract.

<u>Id.</u> at 416-417 (all text effects in original; footnotes and citations omitted).

The fact that the same failure to disclose might have formed the predicate for a rescission under section 3105 did not preclude the Court from applying the language of the policy itself, nor does the decision state or suggest that any other result could be possible.

Indeed, the <u>Gluck</u> decision observes that it is not uncommon for New York insurance disputes to be determined based on policy provisions where the facts could have also been the predicate for a rescission action.  <u>Id.</u> at note 8 ("Despite the potentially broad applicability of the statute, numerous cases applying New York law have treated these two affirmative defenses separately, albeit without an analysis of the statutory language, and have found that specific exclusions can operate to bar a claim irrespective of whether or not a material misrepresentation was made in the insurance application") (citing cases).  The cited cases include <u>Waters v. New York Property Insurance Underwriting Association</u>, 9 Misc. 3d 1126(A), 2005 WL 2934822 (Sup. Ct. New York Co. 2005), in which the court granted summary judgment to the defendant insurer that had both rescinded the policy and denied coverage under an exclusion based on the same operative facts.

There are other examples beyond those cited by the Court in <u>Gluck</u>.  <u>See</u>, <u>e.g.</u>, <u>Coregis Ins. Co. v. Lewis, Johs, Avallone, Aviles and Kaufman, LLP</u>, No. 01 CV 3844, 2006 WL 2135782 (E.D.N.Y. July 28, 2006) (Court applies "prior knowledge" exclusion where the same facts were also a predicate for insurer's alternative rescission claim); <u>Great American Ins. Co. v. Zelik</u>, 19-cv-1805 (JSR), 2020 WL 85102 (S.D.N.Y. January 6, 2020) (Court considers rescission and a denial under an exclusion based on common facts); <u>Travelers Casualty & Surety Co. of America v. Gold, Scollar, Moshan, PLLC</u>, 14cv10106 (DF), 2018 WL 1508573 (S.D.N.Y. March 14, 2018) (Court does not address insurer's denial pursuant to a misrepresentation clause in the policy where Court finds the issue moot in light of summary judgment rescinding policy based on the same misrepresentations); <u>Chicago Ins. Co. v. Halcond</u>, 49 F. Supp. 2d 312 (S.D.N.Y. 1999) (Court considers and decides claim-specific disclaimers based on exclusions and late notice while reviewing rescission in a parallel analysis).

Not only is <u>Gluck</u> on point here, the decision also goes a step beyond to expressly reconcile how <u>Adas Yereim</u> correctly fits into the larger analysis.  The <u>Gluck</u> decision observes that in <u>Adas Yereim</u>, the insurer sought to avoid coverage for a particular claim by and through section 3105 alone, and in the absence of policy language.  <u>See</u> 680 F. Supp. 2d 406 at note 9 ("The [<u>Adas Yereim</u>] court noted that New York law separately empowers an insurer 'to disclaim coverage for particular occurrences without having to establish its right to rescind or to invalidate the entire contract,' through policy exclusions . . . In sum and substance, though in a different context, this conclusion amounted to a finding that exclusions are not subject to the materiality inquiry of § 3105").

Consistent with all of the foregoing, this Court has likewise rejected the argument that a coverage denial based on policy provisions can be treated instead as a rescission.  <u>XL Specialty Ins. Co. v. Level Global Investors, L.P.</u>, 874 F. Supp. 2d 263 (S.D.N.Y. 2012), involved a professional liability policy issued to a hedge fund.  The fund and its principals faced multiple civil, criminal, and regulatory claims arising from allegations of insider trading.  The insurer denied any obligation to defend the insureds based, in part, on a "prior knowledge" exclusion.  The insureds argued, in part, that the exclusion cannot be enforced because to do so would be "tantamount" to a rescission since the insureds were not facing other claims.  This Court rejected the argument because a coverage denial based on a policy provision is distinct from a rescission:

> The Court is also unpersuaded by the Insureds' argument that their exclusion in this case is tantamount to rescinding the Policy, because, during the Policy's pendency, Level Global made no other claims on XL. The happenstance of whether unrelated claims were made on the Policy is irrelevant to the Insureds' rights in this case. The exclusion vs. rescission calculation turns instead on the insurer's stated basis for denying coverage, and here, XL relies exclusively on the Exclusion in the Policy.

Id. at 289.[2]

Nationwide itself, in this Court, has sought to deny coverage both under section 3105 and the terms of its policy based on the same misrepresentations.  See Koczwara v. Nationwide General Ins. Co., 20-CV-2579 (BCM), 2022 WL 1471121 (S.D.N.Y. May 10, 2022).  Nationwide therefore knows or should know that section 3105 does not preempt policy language.

Thus, this action is not an Insurance Law section 3105 action, as Nationwide would have it.  An apple is not an orange.  The section 3105 claim was withdrawn from the action.  The remaining cause of action is directed to the disclaimer pursuant to the Amended Conditions Endorsement.  Therefore, the sole determinative issue is whether the endorsement applies based on the undisputed material facts.  Mt. Hawley's prior motion papers establish that it does.

### B.    Nationwide's Mislabeled "Materiality" Argument

Having elected to set its table with the erroneous assertion that this a section 3105 action, Nationwide then goes on to brief the action exclusively by reference to section 3105 cases ("MT. HAWLEY CANNOT SUSTAIN ITS BURDEN FOR RESCINDING OR DEFEATING RECOVERY UNDER INSURANCE LAW SECTION 3105").  Doc. 80 at 15.[3]  As such, it is respectfully submitted that it would be correct and appropriate for the Court to disregard those sections of Nationwide's brief (Doc. 80 at 15-22) as outside the scope of this action and therefore inherently immaterial.

However, Mt. Hawley nevertheless addresses Nationwide's contention that Beach Cruiser's misrepresentations were somehow immaterial.  Even if, *arguendo*, this were a section 3105 action, Beach Cruiser's misrepresentations were material as a matter of law.

---

[2]    The XL Specialty Court similarly observed that "the contractual defenses of rescission and exclusion are distinct. They must be analyzed pursuant to separate principles." Id. at 280.

[3]    All page references herein are to ECF pagination.

"To establish materiality as a matter of law, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, that show that it would not have issued the same policy if the correct information had been disclosed in the application." Falls Lake National Ins. Co. v. Nexus Builders Corp., No. 21-CV-1403 (RA), 2024 WL 708194 (S.D.N.Y. February 21, 2024) (citation omitted).

In its motion, Mt. Hawley attached its relevant underwriting guidelines. The applicable guidelines are those for "Rental Dwellings." See Doc. 74-12. The Rental Dwelling guidelines set forth Mt. Hawley's eligible market for one to four-unit dwellings rented to others as income properties not occupied by insureds or their immediate families. Id.[4] The guidelines state, in part: "Short term rentals (less than 12 months) and vacation rentals should be referred." Id. The guidelines note the requirement of both an "Acord" application and a "Rental Dwelling Supplemental Application." Id. The "submit" category in the guidelines includes "[s]hort term or vacation rentals." Id. The "ineligible" category includes "Airbnb, VRBO, and similar online operations." Id.

Earlier in this action, Mt. Hawley made a motion for default judgment against Beach Cruiser and Flyway. The motion was denied without prejudice in light of Nationwide's intervention as a defendant. See Doc. 39. In an April 21, 2023 text-only Order, the Court set aside entry of default against Beach Cruiser and Flyway in response to their application to appear and answer. See Entry 49. However, as part of the default judgment motion, Mt. Hawley attached an affidavit from its underwriter. See Doc. 34-14. The affidavit applies equally to Mt. Hawley's motion for summary judgment as it did to its motion for default judgment, and for all of the same reasons. The affidavit states, in part:

---

[4]        The guidelines in places refer to "RLI." RLI Insurance Company is Mt. Hawley's parent company.

9. In connection with Beach Cruiser's application, Bass accepted and considered the "Dwelling Supplemental Application" in which Beach Cruiser answered "no" to the question "Are any properties rented by the day or by the week?" See Ex. 10. [Doc. 34-10]

10. Under the applicable Mt. Hawley underwriting guidelines, had Beach Cruiser answered "yes" to that question, Bass would have been obligated to contact Mt. Hawley for a determination of whether Mt. Hawley would authorize a quotation.

11. Had Bass contacted me as a result of a "yes" answer to the question regarding daily/weekly rentals, my standard practice would include asking Bass to confirm with the applicant that the property is not rented through Airbnb, Vrbo, or similar platforms.

12. Had Beach Cruiser not answered "no" to the question regarding daily/weekly rentals, and had Beach Cruiser then accurately disclosed that it does in fact rent the property through Airbnb and Vrbo, the risk would have been deemed ineligible pursuant to the underwriting guidelines. See Ex. 13. [Doc. 34-13] Mt. Hawley would not have offered a policy to Beach Cruiser.

Id.

If an insurer provides underwriting guidelines showing that the insurer would not have issued the policy but for the misrepresentation, the insurer is entitled to summary judgment on a section 3105 claim as a matter of law. See Falls Lake, supra; In re Savva's Restaurant, Inc., No. 22-08041-reg, 2023 WL 6165319 (Bankr. E.D.N.Y. September 21, 2023); Union Mut. Fire Ins. Co. v. OHR Makif LLC, 22-CV-2025 (JPO), 2023 WL 5576877 (S.D.N.Y. August 29, 2023); 866 East 164th Street, LLC v. Union Mutual Fire Ins. Co., 16-CV-03678 (SN), 2017 WL 4444334 (S.D.N.Y. October 3, 2017); Scottsdale Ins. Co. v. Priscilla Properties, LLC, 254 F. Supp. 3d (E.D.N.Y. 2017); U.S. Underwriters Ins. Co. v. Novel Home Health Care Services of New York, Corp., 14-CV-3715 (ARR)(CLP), 2016 WL 5339358 (E.D.N.Y. January 14, 2016); U.S.

Underwriters Ins. Co. v. 14-33/35 Astoria Boulevard, No. 10–CV–1595 (ARR)(JMA), 2014 WL

1653199 (E.D.N.Y. April 23, 2014); Vermont Mut. Ins. Co. v. Moslem, No. 07 CIV. 7962(SAS);

2011 WL 2893627 (S.D.N.Y. July 14, 2011); U.S. Liability Ins. Co. v. Trance Nite Club, Inc.,

2007 WL 2782714 (E.D.N.Y. September 24, 2007); Bazzicalupo v. Nationwide Ins. Co., 05 CIV.

5127(MDF), 2006 WL 1310369 (S.D.N.Y. May 11, 2006); Royal Indemnity Co. v. Patel, 5:03-

CV-999, 2005 WL 2573514 (N.D.N.Y. October 13, 2005); Courtney v. Nationwide Mut. Fire Ins.

Co., 179 F. Supp. 2d 8 (N.D.N.Y. 2001); Nationwide Mutual Fire Ins. Co. v. Pascarella, 993 F.

Supp. 134 (N.D.N.Y. 1998)

 As in this action, insurers in section 3105 actions win summary judgment by pairing proof

of their underwriting guidelines with an underwriter's affidavit/testimony. See Falls Lake, supra;

Savva's, supra; OHR Makif, supra; 866 East, supra; Novel Home Health, supra; 14-33/35 Astoria,

supra; Trance, supra; Bazzicalupo, supra; Patel, supra; Courtney, supra; Pascarella, supra.

 Assuming for purposes of analysis that a materiality requirement similar to that under

section 3105 applies to the Amended Conditions Endorsement, there can be no dispute that Beach

Cruiser's misrepresentation was material. Mt. Hawley has proffered underwriting guidelines (and

an accompanying underwriter's affidavit) showing that Vrbo rentals are an ineligible risk. There

is no dispute that the underlying claims arose out of rental of the property through Vrbo.

 Indeed, Nationwide is not actually arguing that Beach Cruiser's misrepresentation would

fail to meet the materiality threshold under section 3105 (despite mislabeling its argument as such).

Instead, Nationwide is asking the Court to treat a claim-specific disclaimer pursuant to a policy

endorsement as a rescission, even though it is not a rescission. The argument resides purely in the

realm of the hypothetical. The hypothetical being that Mt. Hawley is seeking to rescind the 2021

policy. Based on that hypothetical, and in complete reliance on that hypothetical, Nationwide

argues that Mt. Hawley's issuance of the 2022 policy "has waived any right to defeat coverage based on the alleged misrepresentation." Doc. 80 at 16. The argument is not a "materiality" argument as Nationwide labels it, but instead a waiver argument.

However, Mt. Hawley withdrew its claim for rescission of the 2021 policy. This action is limited to a claim-specific disclaimer under an endorsement to the 2021 policy. If Mt. Hawley's motion is granted, the 2021 policy still remains in effect for Beach Cruiser for any otherwise covered claims, existing or future. In contrast, if the policy were rescinded, it would be void *ab initio*. As established above, rescission is a separate and distinct remedy from a coverage denial based on policy language. The New York courts have refused to strip away the latter based on the possibility of the former. See, *e.g.*, XL Specialty, *supra*, 874 F. Supp. 2d 263, 289 (S.D.N.Y. 2012) ("The Court is also unpersuaded by the Insureds' argument that their exclusion in this case is tantamount to rescinding the Policy . . . The exclusion vs. rescission calculation turns instead on the insurer's stated basis for denying coverage . . ."); id. at 280 ("the contractual defenses of rescission and exclusion are distinct. They must be analyzed pursuant to separate principles.").

Irreducibly, Nationwide's argument would delete the Amended Conditions Endorsement from the policy. There is no legal basis for a court to remove policy language. Nationwide's argument depends entirely on the notion that section 3105 preempts any coverage denial based on policy language. As established above in detail, the New York courts have expressly rejected this. See, *e.g.*, XL Specialty; Gluck, *supra*, 680 F. Supp. 2d 406 (E.D.N.Y 2010); Waters, *supra*, 9 Misc. 3d 1126(A) (Sup. Ct. New York Co. 2005); Coregis, *supra*, 2006 WL 2135782 (E.D.N.Y. July 28, 2006).

The only significance of Mt. Hawley's agreement to withdraw its rescission claim is that the rescission claim is out of the action. Beach Cruiser and Nationwide cannot use Mt. Hawley's

agreement to withdraw the rescission claim as a predicate for arguing that the legally distinct Amended Conditions Endorsement cause of action can be dismissed from the action.  In <u>Coregis Ins. Co. v. Lewis, Johs, Avallone, Aviles and Kaufman, LLP</u>, *supra*, 2006 WL 2135782 (E.D.N.Y. July 28, 2006), the insureds argued that the insurer had waived the right to rescind the policy at issue by renewing it.  The Court, however, determined that the issue was moot in light of the Court's determination that there was no coverage for the claim at issue under the language of the policy.  In that case, as in this one, the insurer had voluntarily agreed to withdraw the recission claim.  Had the insurer's alleged waiver of the rescission claim and/or its voluntary withdrawal of the rescission claim had any bearing on the applicability of the policy language, the latter issue obviously would not have been moot.

The simplest proof that Nationwide's arguments are legally baseless is that it is commonplace for insurers to issue claim-specific disclaimers of coverage under liability policies and also to renew those same policies upon application by the insured.  The fact that coverage was denied for a claim under one policy obviously does not prohibit the parties from renewing the policy for the following term.  It would be absurd for an insured to argue that renewal of a policy vitiates disclaimers issued under a prior policy.  Here, on August 3, 2022, Bass Underwriters ("Bass") issued Beach Cruiser's agent USI Insurance Services ("USI") a quotation for the 2022 renewal.  The quotation (like the quotation for the 2021 policy) in the Eligibility/Rating section states "no" to whether the risk is a short term or vacation rental."  <u>See</u> Exhibit 1 hereto.  Beach Cruiser's new agent (replacing USI) thereafter issued correspondence to Bass acknowledging the quotations and advising that the agency would be handling the 2022 renewal.  <u>See</u> Exhibits 2 and 3 hereto.  August 3, 2022 was also the day that Beach Cruiser gave first notice of the underlying accident.  <u>See</u> Doc. 74-13.  As such, Beach Cruiser knew it was continuing to misrepresent that it

did not rent the property on a daily or weekly basis at the same time it knew of an injury accident arising out of a Vrbo rental.  As a matter of law, the 2022 renewal is immaterial to applying the terms of the 2021 policy as written.  However, even if it were otherwise, the fact is that Beach Cruiser renewed a policy it knew or should have known by its own terms does not cover claims arising from a misrepresentation – including claims arising out of a Vrbo accident Beach Cruiser was already aware of.  If there is any "waiver" in this case, it is this.

### C.   Nationwide's "Ratification" and Timeliness Arguments

As set forth above, Nationwide's "materiality" argument is in actuality a waiver argument. Nationwide's "ratification" argument is also just a waiver argument – indeed, it is the same waiver argument that Nationwide makes under the guise of materiality.  Nationwide's timeliness argument is just another iteration of the ratification argument that is the same as the waiver argument labeled as a materiality argument.  In short, regardless of the labels attached, Nationwide's arguments are all functionally the same.  They are all premised on the 2022 renewal of the policy, which renewal would only be relevant if the Court credits Nationwide's assumption that the Court will treat this action as a section 3105 action even though it is not.  Mt. Hawley will nevertheless separately address the "ratification" and timeliness arguments.

### i.   Beach Cruiser Sought Renewal of the Mt. Hawley Policy After Submitting an Uncovered Claim Under the Same Policy

The timeline above reflects that Beach Cruiser simultaneously made demand for coverage for a claim arising out of a three-day Vrbo rental while seeking renewal of the same policy under the continuing misrepresentation that Beach Cruiser did not in fact rent the property on a short-term basis.

The timeline also reflects that just thirteen days after receiving notice of the Humphrey claim, Mt. Hawley promptly advised Beach Cruiser that Mt. Hawley had commenced its

investigation. <u>See</u> Doc. 74-14. In response, Mt. Hawley was advised – in response to Mt. Hawley's questions – that the property had been rented through Airbnb at the time of the accident. <u>Id</u>.[5] Sixteen days later, Mt. Hawley asked how long Beach Cruiser had been renting the property through Airbnb. <u>See</u> Doc. 74-16. Throughout this entire process, Mt. Hawley had consistently and expressly reserved its rights. <u>See</u> Doc.74-14; 74-15; 74-16.

Beach Cruiser therefore at all times had actual knowledge and notice that: (1) it had been renting 146 President Street on a daily or weekly basis both before and after representing to Mt. Hawley that it did not do so; (2) it was seeking coverage for the July accident notwithstanding that knowledge; (3) it was simultaneously seeking renewal of the policy under that continuing misrepresentation; (4) Mt. Hawley was now investigating, *inter alia*, how long Beach Cruiser had in fact been renting the property through Airbnb and Vrbo; and (5) Mt. Hawley was reserving its rights with respect to its coverage determination.

On November 14, 2022, Mt. Hawley issued its reservation of rights letter directed to, in relevant part, Beach Cruiser's misrepresentation and the Amended Conditions Endorsement. <u>See</u> Doc. 74-17. Three weeks later, on December 7, 2022, Mt. Hawley commenced this action seeking a declaration that it has no duty to defend or indemnify Beach Cruiser and Flyway. Subject to its reservation of rights, Mt. Hawley also agreed to partially fund Beach Cruiser and Flyway's defense in the <u>Humphrey</u> action (with Beach Cruiser/Flyway's other insurers). Both Mt. Hawley's commencement of this action and its participation in Beach Cruiser and Flyway's defense were consistent with New York law. <u>See</u> <u>Lang v. Hanover Ins. Co.</u>, 3 N.Y.3d 350, 356 (2004) ("an insurance company that disclaims in a situation where coverage may be arguable is well advised

---

[5]     The property was actually rented through Vrbo and not Airbnb. This initial error by Beach Cruiser/Flyway is immaterial.

to seek a declaratory judgment concerning the duty to defend or indemnify the purported insured");
Continental Casualty Co. v. Marshall Granger & Co., LLP, 6 F. Supp. 3d (S.D.N.Y. 2014).

Thus, distilling this timeline, the maximum purported period of "delay" between Mt. Hawley's first notice of the accident and its letter expressly advising Beach Cruiser and Flyway that Mt. Hawley had determined that Beach Cruiser had made misrepresentations for purposes of the Amended Conditions Endorsement was just over three months.

### ii.    "Ratification"

Nationwide identifies "ratification" as a distinct legal argument, but ratification in this context is just another term for waiver.  See Principal Life Ins. Co. v. The Locker Group, 869 F. Supp. 2d 359, 366 (E.D.N.Y, 2012).  Nationwide's argument is, again, premised solely on Mt. Hawley's 2022 renewal of the policy.  It is therefore simply a reiteration of Nationwide's inapposite "materiality" argument (which is actually a waiver argument).  For all of the reasons established above, the renewal of the policy in 2022 has no effect on the contents and applicability of the 2021 policy as written.  *Ipso facto*, ratification cannot be predicated on an immaterial event. And this would be true even if Beach Cruiser had not itself procured the 2022 renewal with actual knowledge of its misrepresentation while seeking coverage for a claim materially connected to that misrepresentation (which it did).

All of Nationwide's cited "ratification" cases are therefore immaterial and irrelevant.  Even if, *arguendo*, the Court were to consider them, they are all at a minimum distinguishable.  Alexi Home Design, Inc. v. Union Mutual Fire Ins. Co., 223 A.D.3d 449 (1st Dept. 2024), does not even contain the word "ratification."  Alexi addresses waiver in a section 3105 action.  Nationwide's citation to Alexi is just an extension of its argument that the Court should treat this action as a section 3105 action, which it is not.  GuideOne Specialty Mutual Ins. Co. v. Congregation Adas

_Yereim_, _supra_, 593 F. Supp. 2d 471 (E.D.N.Y. 2009), is the same.  The case also does not contain the word "ratification" and instead, in the section cited by Nationwide, addresses waiver under section 3105.  (Adas Yereim is relevant to this case, but for another reason, which is that it reflects that rescission and policy-based coverage denials are distinct, as established at length above). Scalia v. Equitable Life Assurance Society of the United States, 251 A.D. 315 (2d Dept. 1998), is also the same.  The case does not mention ratification and is instead just another case involving waiver of the right to rescind.  All of the same is also true of 463 Saddle Up Tremont LLC v. Union Mutual Fire Ins. Co., 205 A.D.3d 511 (1st Dept. 2022).

Nationwide cites Continental Casualty Co. v. Marshall Granger & Co., LLP, _supra_, 6 F. Supp. 3d (S.D.N.Y. 2014), but that case unquestionably and conclusively supports Mt. Hawley, not Beach Cruiser, Flyway, or Nationwide.  Marshall Granger is a section 3105 rescission case so it is immaterial, but even if it were to be considered, the Court in that action observed that "the party need not raise the claim _immediately_ upon notice of the fraud but is afforded a reasonable period after notice of the fraud within which to consider whether or not to rescind."  Id. at 394 (emphasis in original; citation omitted).  The Marshall Granger decision also cites cases holding that a seventh-month delay is reasonable, which is more than double any purported "delay" here.[6] Cf. Locker Group, _supra_.

Nationwide also appears to cite Banque Arabe Et Internationale D'Investissement v. Maryland National Bank, 850 F. Supp. 1199 (S.D.N.Y. 1994), which involved a commercial loan agreement and is not even an insurance case.  The Court in that action also rejected the ratification argument.  The same is true of Sompo Japan Ins. Co. v. Norfolk Southern Railway Co., 762 F.3d

---

[6]    The Court also noted that "[r]escission is a far more drastic step that disclaiming coverage," (id.at 395) which is consistent with the fundamental point that this action is not a rescission action.

165 (2d Cir. 2014), which involved bills of lading, not an insurance policy, and where the Court found no waiver, regardless.

Luria Brothers & Co., Inc. v. Alliance Assurance Co., Ltd., 780 F.2d 1082 (2d Cir. 1986), also does not support Beach Cruiser, Flyway, or Nationwide.  In Luria Brothers, the Court of Appeals found that rescission was waived where the insurer initially denied coverage on other grounds and did not at the time raise rescission.  This is not the case here.  Moreover, Luria Brothers fundamentally supports Mt. Hawley because after determining the policy could not be voided *ab initio*, the Court went on to apply the policy as written – which is exactly the thing Beach Cruiser, Flyway, and Nationwide are trying to convince the Court not to do here.  The same is true of United States Liability Ins. Co. v. WW Trading Co., Inc., 813 Fed. Appx. 636 (2d Cir. 2020), which also supports Mt. Hawley, not Beach Cruiser, Flyway, or Nationwide.

Nationwide also cites Amro Realty Corp. v. Zurich Ins. Co., 936 F.2d 1420, 1431 (2d Cir. 1991), but Amro is another case that supports Mt. Hawley, not Beach Cruiser, Flyway, or Nationwide.  Amro is not a rescission case.  Amro involved, in relevant part, a claim-specific coverage denial premised on policy language.  Amro reflects that waiver in the context of a coverage denial (as distinct from rescission) arises where an insurer raises a coverage defense that it could have raised but did not raise when it previously raised other coverage defenses.  Id. at 1431 ("New York law establishes that an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense.").  There is no such claim here, nor could there be.  See Doc. 74-17.

In short, Nationwide does not and cannot cite any authority for the proposition that a denial of coverage for particular claim pursuant to the language of a policy can instead be treated as an

action to rescind under section 3105.  That is because the two claims are distinct in every material way.  The former is based on common law relating to inducement/formation of a policy with a remedy of voiding the policy in its entirety.  The latter is based on policy language with the remedy being a declaration of no coverage that otherwise leaves the policy in place for other potential claims.  Nationwide's arguments to the contrary would in effect delete the Amended Conditions Endorsement from the policy.

### iii.    Timeliness

Nationwide cites selected section 3105 cases for its argument that Mt. Hawley has not acted "promptly.[7]"  However, for all of the reasons set forth above, section 3105 cases are irrelevant because this is not a section 3105 action.  Nationwide continues to brief the case it wants, not the case at hand.  Nevertheless, Nationwide fails to cite a section 3105 case in which a delay of three months was held to preclude rescission.[8]

If this were a section 3105 case, Nationwide's timeliness arguments would fail as a matter of law.  See, e.g., Chicago Ins. Co. v. Kreitzer & Vogelman, 265 F. Supp. 2d 335 (S.D.N.Y. 2003) (six-month delay in rescinding policy not unreasonable; "Indeed, public policy supports the allowance of such a reasonable investigation; it would be unwise to give insurers an economic incentive to rescind insurance at the drop of a hat and without sufficient investigation. Such willy-nilly actions would obviously result in less insurance coverage, but also would engender countless

---

[7]       In this section of its brief, Nationwide refers to Mt. Hawley "seeking to defeat recovery under the three policies."  Doc. 80 at 20.  This is an incorrect characterization of the action.  The action is directed solely to Mt. Hawley's disclaimer of coverage for the Humphrey and Slade claims under the 2021 policy pursuant to the Amended Conditions Endorsement.  This action does not involve any other policies.  Mt. Hawley was not obligated to extend this action to prior policies.  See Chicago Ins. Co. v. Fasciana, No. 04 Civ. 7934(LAP), 2006 WL 3714310 (S.D.N.Y, December 13, 2006).

[8]       Nationwide again cites United States Liability Ins. Co. v. WW Trading Co., Inc., supra, 813 Fed. Appx. 636 (2d Cir. 2020), but the delay in that action was two-and-a-half years.  Nationwide also cites Ballow Brasted O'Brien & Rusin P.C. v. Logan, 435 F.3f 235 (2d Cir. 2006), which is not even an insurance case (it involved rescission of a substitution of counsel agreement) and involved a delay of four years.

lawsuits such as this one."); <u>Principal Life Ins. Co. v. Locker Group</u>, *supra*, 869 F. Supp. 2d 359 (E.D.N.Y. 2012) (seventh-month delay in rescinding policy not unreasonable); <u>Precision Auto Accessories, Inc. v. Utica First Ins. Co.</u>, 52 A.D.3d 1198 (4th Dept. 2008) (eight-month delay in rescinding policy not untimely where insured not prejudiced by delay)

      If timeliness were a *bona fide* issue in this case, which it is not, the correct legal framework would be the measure of timeliness of a coverage denial pursuant to a policy provision (*i.e.*, the Amended Conditions Endorsement), not timeliness of a section 3105 rescission.  In the context of a coverage denial, timeliness is determined by common-law waiver and estoppel.  <u>See Keyspan Gas East Corp. v. Munich Reinsurance America, Inc.</u>, 23 N.Y.3d 583 (2014).  Beach Cruiser, Flyway, and Nationwide do not and cannot argue that Mt. Hawley is estopped from denying coverage pursuant to the Amended Conditions Endorsements.  Rather, their arguments are premised on waiver.  As set forth above, waiver in this context applies where an insurer raises a coverage defense that it could have raised but did not raise when it previously raised other coverage defenses.  <u>See Amro</u>, *supra*, 936 F.2d 1420, 1431 (2d Cir. 1991) ("New York law establishes that an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense.").  There is no such claim here, nor could there be.  <u>See</u> Ex. Doc. 74-17.  Furthermore, as noted above, Mt. Hawley has proceeded exactly as encouraged by the New York Court of Appeals by commencing this action for a judicial determination of the validity of its disclaimer.  <u>See Lang v. Hanover Ins. Co.</u>, *supra*, 3 N.Y.3d 350 (2004).  Moreover, it continues to provide Beach Cruiser and Flyway with a defense while this action is pending.  <u>See Continental Casualty Co. v. Marshall Granger & Co.</u>, LLP, *supra*, 6 F. Supp. (S.D.N.Y. 2014).

2.      **Beach Cruiser and Flyway's Unsupportable Factual and Legal Contentions**

A.      **The Question at Issue Is Unambiguous as a Matter of Law; Beach Cruiser's Misrepresentation Is Equally Unambiguous**

Beach Cruiser and Flyway make the twin argument that the Dwelling Supplemental Application is ambiguous and that Beach Cruiser's answer to the question at issue was somehow not a misrepresentation. Both arguments are legally and factually groundless and lack even basic credibility.

In the Dwelling Supplemental Application, Beach Cruiser answered "No" to the question "Any properties rented by the day or by the week?" The question is not ambiguous by any measure. To the contrary, it is phrased in simple, straightforward, and basic English. Beach Cruiser and Flyway indisputably were renting 146 President Street through Airbnb and Vrbo for years before the underlying accident. Obviously, such rentals were for days or weeks, and Beach Cruiser and Flyway do not and cannot contend otherwise. Beach Cruiser and Flyway conspicuously do not offer any possible factual basis for answering "no" to the question.

Instead, they deflect to irrelevant and extraneous arguments that in reality further undermine their position. Mainly, they point to the fact that their principals evidently own and lease a portfolio of thirty or more properties. They argue that they rent most of the properties in this extensive portfolio on a long-term basis. This point perfectly captures their misrepresentation.

First, in making that assertion, Beach Cruiser and Flyway implicitly acknowledge they understand the difference between a long-term rental and a daily/weekly rental (which of course they must). Because to point out that most of their properties are rented on a long-term basis is to acknowledge that they understand the difference between how they rent those properties and how they rent 146 President Street. The application question is directed to that very difference.

Second, for Beach Cruiser and Flyway to explain their answer on the basis of this extensive portfolio is a *non sequitur*. The application for the policy was limited to just three rental properties. Beach Cruiser's other holdings are not insured under the Mt. Hawley policy, nor did Beach Cruiser seek coverage for those other properties in the application. The other properties are totally irrelevant. Yet, now, Beach Cruiser appears to argue that it did not understand that the application for insuring 146 President Street was directed to the properties that were the subject of the application?

Third, pointing to the insureds' extensive rental real estate portfolio is to lay bare the obvious fact that the principals are sophisticated and experienced businesspeople. For these same people to claim now that they do not understand the difference between long-term and short-term rentals is incredible.

This point reaches into the legal frivolity of Beach Cruiser and Flyway's argument that the application is somehow ambiguous. As an objective matter, a real estate holding organization applying for liability insurance for particular parcels in its portfolio would understand that questions will be directed to the manner in which those properties are rented. The principals' opinion of how it matters for the insurance company's purposes is irrelevant. Their obligation was to answer the question accurately. They did not. Beach Cruiser's principals made the corporate decision to put 146 President Steet into the Airbnb/Vrbo rental space. However, when they applied for liability insurance for the property, they withheld that decision. Their motives, even if, *arguendo*, innocuous, are irrelevant. The argument also implies a corporate double standard. Beach Cruiser as a corporation now claims it was entitled to answer or disregard the application as it saw fit in its corporate eyes, which is to deny Mt. Hawley's own corporate interest in obtaining

the information it requested.  Even if it is subjectively truthful, Mr. Nevin's affidavit is immaterial and therefore inadmissible.

Beach Cruiser and Flyway's other arguments similarly deflect from the actual issue.  The issue is whether Beach Cruiser misrepresented how it rents 146 President Street.  Instead, Beach Cruiser and Flyway argue that Mt. Hawley should have insisted that they complete a different supplemental application.  They also argue that the application should have expressly asked if properties were rented through Airbnb and Vrbo *et al*.  These types of arguments are not only unpersuasive, they are immaterial.  The only material issue is whether Beach Cruiser provided an accurate response to the actual question that was asked.  It did not.  Furthermore, although it does not matter, Beach Cruiser does not offer any reason why it could not have answered the question truthfully.  It only offers arguments that Mt. Hawley is somehow responsible for Beach Cruiser's own misrepresentation.

Beach Cruiser, Flyway, and Nationwide also rely on an unnotarized affirmation by Beach Cruiser/Flyway principal Lindsay Nevin ("Nevin").  The affirmation changes nothing set forth above.

In paragraph five of the affirmation, Nevin asserts that "[t]he RSUI Application is dated September 2, 2020 because at that time we were seeking commercial insurance coverage for our properties, including the Property, and Defendants were provided the application by Mt. Hawley's managing general agent, Bass Underwriters, to fill out and submit to Bass for the placing of coverage."  Doc. 78-23.  However, the application was for just three properties.  In paragraph seven, Nevin states "[a]t the time that the application was provided to us by Mt. Hawley's managing agent, we owned, managed, and operated approximately (30) properties.  To the best of my knowledge, *all* of these properties were rented monthly, if not yearly, but for only three of the

thirty properties, they were rented on a mixed basis, which means yearly, monthly, and on occasion, an overnight or weekly stay." Id. (emphasis in original).  This is misleading, as twenty-seven of the referenced thirty properties have nothing to do with the application, the Mt. Hawley policy, or this action.

Nevin also avers that he is personally familiar with submission of the Dwelling Supplemental Application (see paragraph 3), but then states "I only recently learned that the RSUI Application Mt. Hawley's managing agent required us to fill out and submit was ***not*** a Mt. Hawley form underwriting application" (see paragraph 8; emphasis in original).  All of this is immaterial because it does not (and cannot) undo Beach Cruiser's misrepresentation.  But, for the record, it is another misleading statement.  First, it was an RSUI form, not an RSUI "application."  The application was for the Mt. Hawley policy.  Second, Nevin offers no factual explanation for why the letterhead of the form makes any difference or how the form having "RSUI" at the top instead of "Mt. Hawley" is causally related to Beach Cruiser's misrepresentation.  Beach Cruiser and Flyway argue that Mt. Hawley should have used a different form, but that it is a legal argument (and an invalid one), not a factual argument, so the affirmation is no more than an extension of Beach Cruiser and Flyway's brief.  The argument also begs the question because Nevin asserts that Beach Cruiser would have truthfully completed the Mt. Hawley form but offers no explanation for why it failed to truthfully complete the RSUI form.  Likewise, an "affirmation" of what someone would have done in a hypothetical world is not a statement of fact.  Third, Bass did not "require" Beach Cruiser to do anything.  If Beach Cruiser did not wish to apply for the policy or to truthfully disclose its actual use of 146 President Street, it did not have to.  Beach Cruiser alone is responsible for its misrepresentation, yet at every turn seeks to blame Mt. Hawley for it.

Nevin then spends multiple paragraphs referencing other questions and noting that some of them required more than "yes" or "no" answers. First, none of these assertions is a statement of fact. They are simply legal argument. Again, the affirmation is overwhelmingly non-evidentiary in nature and is just a continuation of the brief. Second, Nevin's complaint that the question at issue was a "yes" or "no" question is itself a stark reflection of the misrepresentation at issue. Whether Beach Cruiser was renting 146 President Street on a daily or weekly basis is a simple question. Beach Cruiser and Flyway argue that they were entitled to answer "no" since the form did not require further explanation, even though the "no" was a complete misrepresentation. They presume Mt. Hawley was obligated to afford a space for an explanation of a truthful answer. They likewise assume they were entitled to give an untruthful answer based on their own opinion of the form. All of these assertions are just more of the "Mt. Hawley made us do it" theme. The affirmation does not resolve the misrepresentation. It perpetuates it.

Nevin then asserts that "because we rented nearly all of our units and properties on a monthly or yearly basis, with only the occasional overnight/weekly stay at the *same* units, we gave 'No' as our best possible answer to a question we viewed as confusing in the context of our long and short term rental model." Doc. 78-23 at ¶ 16 (emphasis in original). The only confusing thing is this statement itself. First, Nevin again seems to framing his assertions with his entire portfolio of properties in mind, not the three properties covered by the policy. Second, the statement provides no explanation of how 146 President Street could be "occasionally" rented on a daily or weekly basis when it is rented on a monthly or yearly basis. And, although it is immaterial, Nevin speaks only in opaque terms such as "occasional" and "nearly" rather than specifying how often or how many times the property was actually rented through Airbnb or Vrbo. Beach Cruiser has its own records. If Beach Cruiser and Flyway believe that renting the property only occasionally

through Airbnb or Vrbo is important (which it is not), then they could have disclosed as a proper statement of fact what "occasionally" actually means. Third, the statement yet again fails to explain why the question was actually confusing to Beach Cruiser. Even if Nevin's affirmation is taken as truthful evidence instead of argument, the affirmation does not reflect that the form was confusing. At most, Nevin is expressing his own (alleged) confusion of why the RSUI form did not ask its questions differently.

The affirmation also calls back to Beach Cruiser, Flyway, and Nationwide's argument (further discussed below) that Beach Cruiser provided Bass with notice of its short-term rentals of 146 President Street in February 2022, when USI emailed Bass to ask about possibly obtaining a quotation for a totally separate project. But Nevin does attest to a single fact related to that exchange, nor does he identify what (if any) personal knowledge he has of the exchange or its purpose. He merely sets forth selected bits of the exchange. It is simply more argument.

Finally, Nevin also states that Beach Cruiser paid $59,148.00 for the renewal of the policy. See Doc. 78-23 at ¶ 19. This is a blatant misrepresentation of fact. The premium for the renewal policy was $500.00. See Exhibit 4 hereto. Nevin cites to an exhibit showing what Beach Cruiser/Flyway paid for numerous policies (including policies issued by other insurance companies) with a grand total of $59,148.00. See Doc. 78-18. Beach Cruiser, Flyway, and Nationwide repeat this misrepresentation in their briefs. See Doc. 83 at 10; Doc. 80 at 10. Thus, in an affirmation that nominally attempts but fails to undo a misrepresentation, Beach Cruiser makes another misrepresentation.

Beach Cruiser and Flyway cite cases in which an application question was found ambiguous, but none of them applies here or supports Beach Cruiser and Flyway. Beach Cruiser and Flyway cite GuideOne Specialty Mutual Ins. Co. v. Congregation Bais Yisroel, 381 F. Supp.

2d 267 (S.D.N.Y. 2005). However, the Court in that action found an application question ambiguous on the facts of that case because it asked if the applicant was an owner or a tenant. There, the applicants respectively owned the land and the building. The case bears no resemblance to this one. First, the Court in <u>Bais Yisroel</u> found that the applicants did not make a misrepresentation in the first place since both held ownership interests. Here, Beach Cruiser cannot deny it made a misrepresentation. Second, the question here cannot present any ambiguity because it specifically asks if the insured rents the properties to be insured on a daily or weekly basis. Beach Cruiser did rent 146 President Street on a daily and weekly basis but still answered "no." Beach Cruiser and Flyway's arguments are not truly directed to an ambiguity in the question. Their arguments are instead directed to their various excuses for making a misrepresentation.

In <u>Garcia v. American General Life Ins. Co. of New York</u>, 264 A.D.2d 808 (2d Dept. 1999), the court found an ambiguity in an application where the application used the term "normal vacation" day and the insured's employer recorded the insured's absences as vacation days. The court allowed the insured to characterize his absences as vacation days since that is how his employer classified the absences. There is nothing like this here. Here, the application asked if the properties to be insured were rented on a daily or weekly basis. They were. The question and response here do not implicate any arguments based on terminology.

In <u>Fanger v. Manhattan Life Ins. Co. of New York, N.Y.</u>, 273 A.D.2d 438 (2d Dept. 2000), the court implicitly found that the insured could understand all of the health-related questions in a life insurance application to be directed to physical conditions rather than his obsessive-compulsive disorder. This case does not involve any such thing. The question at issue in this action stands on its own. The questions preceding and following it do not and could not shape

how the insured was obligated to answer it.  Either Beach Cruiser rented the properties to be insured on a daily or weekly basis, or it didn't.  It did, but it answered "no" anyway.

Here, for all of the reasons set forth above, the question at issue was unambiguous as a matter of law, and Beach Cruiser's misrepresentation was equally ambiguous.  New York courts will not strain to find an ambiguity in an application question that is readily understandable to a reasonable insured (including business insureds), and where the insured's claim of confusion lacks foundation due to the straightforward nature of the question.  See, *e.g.*, Jackson v. The Travelers Ins. Co., 113 F.3d 367 (2d Cir. 1997); In re Savva's Restaurant, Inc., *supra*, 2023 WL 6165319 (Bankr. E.D.N.Y. September 21, 2023); Union Mut. Fire Ins. Co. v. OHR Makif LLC, *supra*, 2023 WL 5576877 (S.D.N.Y. August 29, 2023); National Union Fire Ins. Co. of Pittsburgh, PA v. PVT Limited, 338 F.R.D. 579 (S.D.N.Y. 2021); Principal Life Ins. Co. v. The Locker Group, *supra*, 869 F. Supp. 2d 359 (E.D.N.Y, 2012); Security Mutual Ins. Co. v. Perkins, 86 A.D.3d 702 (3d Dept. 2011); Bleecker Street Health & Beauty Aids, Inc. v. Granite State Ins. Co., 38 A.D.3d 231 (1st Dept. 2007); U.S. Liability Ins. Co. v. Trance Nite Club, Inc., *supra*, 2007 WL 2782714 (E.D.N.Y. September 24, 2007); Gentile v. Continental American Life Ins. Co., 215 A.D.2d 626 (2d Dept. 1995); Northwestern Mutual Life Ins. Co. v. Buffalino, 1991 WL 183350 (S.D.N.Y. September 10, 1991); Schondorf v. SMA Life Assurance Co., 745 F. Supp. 866 (E.D.N.Y. 1990).

### B.    The Railing Defect Is Irrelevant and Immaterial

Beach Cruiser and Flyway also claim that the accident would have happened in the same fashion even if the property had not been rented out through Vrbo.  This is just another immaterial argument that attempts to deflect from Beach Cruiser's misrepresentation.  Even under section 3105 standards, the only inquiries are whether the insured made a misrepresentation and whether the misrepresentation was material under the insurer's underwriting guidelines.  Beach Cruiser and Flyway's argument regarding the railing is implicitly a prejudice argument tied to potential claim

outcomes, which is immaterial. See Union Mutual Fire Ins. Co. v. 142 Driggs LLC, 2023 WL

9232956 (E.D.N.Y. December 11, 2023) (insurers can seek rescission even in the absence of an

underlying claim). Furthermore, the argument is conjectural, speculative, and not based on fact.

Cf. Precision Auto Accessories, Inc. v. Utica First Ins. Co., 52 A.D.3d 1158 (4th Dept. 2008), lv.

den., 11 N.Y.3d 709 (2008). It also conflates coverage and underlying tort issues. The argument

presumes that a disclaimer of coverage depends on how Beach Cruiser and Flyway constructed

and maintained the railing. However, for purposes of the Amended Conditions Endorsement, the

only relevant consideration is that the policy does not cover the accident at issue because Beach

Cruiser misrepresented its use of the property.[9]

Here, the risk is not covered under the Mt. Hawley policy because Beach Cruiser

misrepresented the risk. The risk here is instead indisputably covered by the Vrbo liability policy

issued by Generali U.S. Branch ("Generali"). This makes sense. The coverage should follow the

risk. By disputing the disclaimer, Beach Cruiser and Flyway are not only seeking to undo Beach

Cruiser's misrepresentation, they are overreaching the coverage properly in place for claims

arising out of Vrbo rentals, which is the Generali policy provided to Beach Cruiser by Vrbo. By

---

[9]        Beach Cruiser and Flyway argue at length that the Amended Conditions Endorsement should be regarded as
an exclusion rather than as conditions to coverage. However, the endorsement expressly states it forms conditions of
coverage. The relevant condition precedent set forth therein is clear – coverage for a claim is conditioned on the
insured not providing incorrect, false, inaccurate, or incomplete information in the application for the policy. An
insured who makes a misrepresentation in its application has failed to satisfy a condition precedent to coverage for
any future claims related to the misrepresentation. Beach Cruise and Flyway do not offer any reason why the
endorsement does not impose a condition to coverage. Nor do they legally distinguish the cases cited by Mt. Hawley,
which involve the insured's obligation prior to a future claim to secure proper loss-transfer from contractors. Both
types of endorsements form conditions precedent to coverage because they require the insured to do (or not do)
something prior to a potential claim in order to preserve coverage for that claim later. Furthermore, even if, *arguendo*,
the Amended Conditions Endorsement is regarded as an exclusion, Beach Cruiser and Flyway do not set forth any
reason why the endorsement still does not apply as written. Beach Cruiser and Flyway, like Nationwide, simply want
the Court to remove the endorsement from the policy. Beach Cruiser and Flyway' argument that the Amended
Conditions Endorsement is in actuality an exclusion is also a dead end for them, as their opposition and own motion
rely on waiver. Under New York law, exclusions are not subject to waiver. See Albert J. Schiff Associates, Inc. v.
Flack, 51 N.Y.2d 692, 698 (1980) ("where the issue is the existence or nonexistence of coverage (e. g., the insuring
clause and exclusions), the doctrine of waiver is simply inapplicable").

intervening in the action, Nationwide is engaging in the very same overreach, and as a stranger to the Mt. Hawley policy, no less.[10]  Generali, in contrast, has not attempted to intervene in the action, which is appropriate and telling.

### C.    Beach Cruiser's Immaterial and Unsupported Contentions of Fact

Beach Cruiser and Flyway also make the same waiver arguments that Nationwide makes, which were addressed extensively above.  All of the waiver arguments (whether couched as waiver, materiality, ratification, or timeliness) are immaterial because they are all premised on the 2022 renewal of the policy.  Therefore, any of the purported facts upon which those arguments are based are equally immaterial.

However, even if, *arguendo*, the Court were to consider those fact contentions, Mt. Hawley is still entitled to summary judgment.

Beach Cruiser and Flyway contend that Mt. Hawley knew that 146 President Street was being rented on a short-term basis by way of a February 2022 email exchange between USI and Bass.  However, the exchange manifestly falls far short of some sort of amelioratory disclosure that Beach Cruiser had previously misrepresented its use of 146 President Street.  On its face, the exchange is directed to a completely different matter.  It is directed to Beach Cruiser's tentative inquiry into seeking a future quotation to insure a new construction project (it was not even an actual request for a quote).  The inquiry did not relate to the Mt. Hawley policy or 146 President Street.  Nor is there any indication in the exchange that Bass would have obtained a quotation for such insurance from Mt. Hawley.  Consistent with this, the underwriter's questions and comments

---

[10]    By intervening, Nationwide has placed Mt. Hawley in a defense posture with respect to all of the attorney's fees that Mt. Hawley has had to incur specifically to respond to Nationwide's demands and motion.  These fees are significant and are recoverable should Mt. Hawley prevail in this action.  See Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y. 12 (1979).  If Mt. Hawley's motion for summary judgment is granted, Mt. Hawley respectfully requests that the Court grant leave for an inquest for recovery of fees.

in response to USI's email were directed solely to the matter at hand therein, which was possibly arranging insurance for a future construction project.  In short, the exchange is irrelevant.  Furthermore, even if the exchange were relevant, which it is not, Beach Cruiser and Flyway present it to the Court as an undisputed fact, which is untenable.  The Bass underwriter who was on the exchange testified at deposition in this action that he did not recall reading the email.  At deposition, he testified upon reading it that he understood it to refer to insurance for a new property.  He did not testify or suggest that he understood the email to be a representation regarding how Beach Cruiser operated 146 President Street.  See Doc. 82 at 20.  The Bass underwriter testified that he learned that Beach Cruiser was renting the property on a short-term basis in December 2023.  Id. at 10-12.  All of the same is also true of Beach Cruiser and Flyway's arguments based on an inspection report addressing the conditions and upkeep of the property made by a building inspection company.  The report was directed to the condition of the property.  It was not directed to re-underwriting the policy.  Id. at 16-17, 33.  Consistent with this, the report culminated with a request for Beach Cruiser to update the fire extinguisher inspections.

And even if, arguendo, the email exchange concerned Beach Cruiser's use of 146 President Street, which it did not, or if the inspection report was procured as part of the application, which it was not, the result would not change.  New York law does not countenance "gotcha" arguments in this context, whereby an insured attempts to point to a prior exchange made for one purpose as evidence it was a disclosure of information for a different purpose.  In Chicago Ins. Co. v. Kreitzer & Vogelman, supra, 265 F. Supp. 2d 335, 343 (S.D.N.Y. 2003), the Court observed that under New York law, waiver "must be clear, unmistakable and without ambiguity" and that negligence or insufficient oversight are not a basis for waiver.  "Something more – something tantamount to notice – is required."  Union Mut. Fire Ins. Co. v. OHR Makif LLC, supra, 2023 WL 5576877, *6

31

(S.D.N.Y. August 29, 2023) (citation omitted) (rejecting insured's argument that insurer knew of undisclosed violations because they were a matter of public record and because insurer had inspected the property).  See also John Hancock Life Ins. Co. v. Perchikov, 553 F. Supp. 2d 229 (E.D.N.Y. 2008) (rejecting insured's argument that insurer knew of the insured's other life insurance policies that were not properly disclosed in the application based on insurer's receipt of a Medical Information Bureau report); Hall v, Mountain Valley Indemnity Co., 2024 WL 2943747 (S.D.N.Y. June 10, 2024) (rejecting waiver based on insured's inspection of the insured property).

Beach Cruiser, Flyway, and Nationwide's mining in this action of Bass's files for alleged references to how Beach Cruiser might have rented 146 President Street are not a predicate for waiver arguments because those alleged references were not made in the context of or for the purpose of Beach Cruiser correcting its application for the policy at issue.  The references were made for different purposes in different contexts.  Nor is there any claim or evidence that Mt. Hawley processed the documents for any other purpose.

In addition, Beach Cruiser and Flyway's characterization of the email exchange is in conflict with its other assertions of fact.  Referencing the email exchange, Nevin avers that "we made Mt. Hawley aware that it knew our properties insured under the Policy were short term rentals."  Doc. 78-23 at ¶ 17.  This argumentative statement proves just the opposite.  Making Mt. Hawley "aware" of what it "knew" would entail an express discussion of Beach Cruiser's short-term rentals of 146 President Street during which Mt. Hawley affirmed its knowledge of that fact in a manner that Beach Cruiser would have understood to be just such an affirmation.  Of course, the emails do nothing of the kind since the exchange was directed to the future possibility of seeking insurance for an unrelated project.  And, again, Nevin has no personal knowledge of the exchange.  His affirmation merely selectively quotes the exchange for purposes of a legal

argument.  His statement also suggests that Beach Cruiser did not, in fact, only "occasionally" rent 146 President Street on a daily or weekly basis, since Beach Cruiser was purportedly disclosing to Mt. Hawley "that our properties insured under the Policy were short term rental."  And if it is not true that Beach Cruiser only "occasionally" rented 146 President Street on a daily or weekly basis, then Beach Cruiser's own factual basis for its alleged "confusion" over the application completely falls away.

## **CONCLUSION**

For all of the foregoing reasons, Mt. Hawley is entitled to and respectfully demands summary judgment:  (1) declaring that Mt. Hawley has no duty to defend or indemnify Beach Cruiser or Flyway in connection with the <u>Humphrey</u> action, the Slade claim, or the July 23, 2022 incident at issue; and (2) granting such other and further relief in favor of Mt. Hawley as the Court finds just and appropriate.

Dated:  July 29, 2024

Respectfully submitted,

DELAHUNT LAW PLLC


By:    _____s/_____

Timothy E. Delahunt
Bar Roll. No. TD-2791
*tdelahunt@delahuntpllc.com*

295 Main Street
Suite 836
Buffalo, New York 14203
Tel.: (716) 878-9178

*Attorneys for plaintiff*
*Mt. Hawley Insurance Company*