```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/6/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

MT. HAWLEY INSURANCE COMPANY,                :
                                             :
                              Plaintiff,     :        1:22-cv-10354-GHW
                                             :
            -against-                        :        MEMORANDUM
                                             :        OPINION & ORDER
BEACH CRUISER, LLC, *et al.*,                :
                                             :
                              Defendants.    :
                                             :
-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

 Defendants Beach Cruiser, LLC and Flyway Management, LLC own and manage multiple
rental units.  In 2021, Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley") issued Defendants
an insurance policy (the "Policy").  The Policy covered bodily injury liability in connection with their
units, but excluded coverage in the event that Defendants provided "incorrect, false, inaccurate or
incomplete information" in their application.  Defendants' application for the Policy checked "No"
in response to the question "Are any properties rented by the day or by the week?"  However,
Defendants had been renting some of their units by the day or by the week for years.

 Defendants rented one such property (the "Property") to a group of tenants from July 21 to
July 24, 2022.  On July 23, 2022, two of the tenants allegedly fell from the second floor of the
Property after a porch railing collapsed.  Both tenants seek damages from Defendants for their
alleged injuries.  Defendants claim coverage under the Policy.  Plaintiff argues that Defendants'
claims are excluded from coverage because Defendants misrepresented the Property's rental status
in their application.

 Both sides now move for summary judgment, seeking competing declarations regarding
Plaintiff's duties to defend and indemnify Defendants.  Nationwide General Insurance Company

("Nationwide"), which insures Flyway, has intervened as an additional defendant and moves for summary judgment in favor of Defendants. The principal question before the Court is whether New York Insurance Law § 3105(b) ("Section 3105(b)") modifies the parties' agreed-upon exclusion of coverage based on Defendants' misrepresentations. The Court concludes that it does not. Section 3105(b) provides that "[n]o misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material." The statute codifies a right that insurers have long had at common law to defeat recovery under a policy issued based on material misrepresentations. It applies where an insured's claim would otherwise have been covered under the insurance contract. It does not apply where, as here, an insured's claim is excluded from the insurance contract by prior mutual agreement.

Accordingly, because the Policy unambiguously excludes claims in the event of a misrepresentation in Defendants' application, and because Defendants' application unambiguously misrepresented the rental status of the Property, Plaintiff's motion for summary judgment is GRANTED and Defendants' and Nationwide's motions for summary judgment are DENIED.

## I.    BACKGROUND[1]

Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley") is an insurer. *See* Dkt. No. 75 ¶ 9 ("Plaintiff 56.1 Stmt."). Bass Underwriters ("Bass") served as Mt. Hawley's managing general agent for all purposes relevant to this action. Dkt. No. 91 ¶ 19 ("Nationwide 56.1 Stmt."); Dkt. No. 76 at 4 n.3 ("Plaintiff Mem.") (stating that "for purposes of the claims and defenses between the parties to this action, Bass's actions and alleged actions will be deemed to be Mt. Hawley's").

Defendant Beach Cruiser, LLC ("Beach Cruiser") owns multiple residential properties and rents them out to tenants. It owns a residential property located at 146 President Street, Unit C,

---

[1] The facts are drawn from the parties' Local Rule 56.1 statements and other documents submitted in connection with the parties' cross-motions for summary judgment. They are undisputed in relevant part unless otherwise noted.

Charleston, South Carolina (the "Property"). Plaintiff 56.1 Stmt. ¶ 1. Defendant Flyway

Management, LLC ("Flyway," and together with Beach Cruiser, "Defendants") managed the

Property on behalf of Beach Cruiser at all relevant times. *Id.* ¶ 2. Nonparty USI Insurance Services

("USI") served as an insurance broker for Beach Cruiser with respect to the Policy. Nationwide 56.1

Stmt. ¶ 23.

Mt. Hawley issued Beach Cruiser a commercial general liability policy that ran from August

31, 2020 to August 31, 2021. Nationwide Rule 56.1 Stmt. ¶ 20; Dkt. No. 78 ("Beer Decl."), Ex. F

(the "Prior Policy"). Mt. Hawley issued a renewed general liability policy that ran from August 31,

2021 to August 31, 2022. Nationwide Rule 56.1 Stmt. ¶ 21; Beer Decl., Ex. E (the "Policy"). Mt.

Hawley issued a third renewed general liability policy that ran from August 21, 2022 to August 31,

2023. Nationwide Rule 56.1 Stmt. ¶ 22; Beer Decl., Ex. G (the "Subsequent Policy"). In addition to

Beach Cruiser, Flyway qualifies as an insured under these policies in its capacity as Beach Cruiser's

real-estate manager. Plaintiff Rule 56.1 Stmt. ¶ 11.

The Policy includes coverage for, among other things, "bodily injury liability" up to

$1,000,000 per occurrence, Dkt. No. 74 ("Delahunt Aff."), Ex. 5 at 45; *id.*, Ex. 9 at 2, subject to the

Policy's terms and conditions, Plaintiff Rule 56.1 Stmt. ¶ 10. The Policy includes an Amended

Conditions Endorsement (the "Endorsement"), which provides:

> There is no coverage under this policy, this insurance shall not apply, and we shall have
> no duty to defend or indemnify any insured for any claim or "suit" alleging "bodily
> injury," "property damage," or "personal and advertising injury" if, at any time and
> regardless of intent, you or any other insured provide incorrect, false, inaccurate or
> incomplete information in the Application for this policy. For purposes of this
> endorsement, the Application(s) includes, without limitation, any application forms
> and any other forms, documents, or information submitted to us in connection with
> or relating to issuance of this policy. For purposes of this endorsement, the
> Application(s) is a part of this policy and is incorporated herein.

*Id.* ¶ 12.

Beach Cruiser's application for the Policy included a September 2, 2020 Dwelling

Supplemental Application. *Id.* ¶ 14; Delahunt Aff., Ex. 8 (the "Application"). Question 3 in the Application provided, in full:

> What is the average monthly rent?    1BR $_____    2BR $_____    3BR $_____
>
> Are any properties rented by the day or by the week?        ☐ Yes ☐ No

Application at 1.

After filling out the average-monthly-rent questions, Beach Cruiser checked the "No" box in response to the question "Are any properties rented by the day or by the week?" Plaintiff Rule 56.1 Stmt. ¶ 15; Application at 1. However, Beach Cruiser had been renting the Property through Vrbo, an online platform for short-term vacation rentals, since 2018. *Id.* ¶¶ 4, 17, 18; Delahunt Aff., Ex. 16.

On January 25, 2022, Beach Cruiser executed a three-day rental contract through Vrbo for a party to stay at the Property from July 21 to July 24, 2022. *Id.* ¶ 3; Delahunt Aff., Ex. 2. The party included Walter Patrick Humphrey and Jonathan Charles Slade. Plaintiff Rule 56.1 Stmt. ¶ 3.

On July 23, 2022, Mr. Humphrey and Mr. Slade allegedly fell through a second-floor balcony on the Property. *Id.* ¶ 5. On August 26, 2022, Mr. Humphrey filed an action in South Carolina state court against Beach Cruiser and Flyway arising from his alleged injuries (the "Humphrey Action"). *Id.* ¶¶ 6–7. On September 7, 2022, Mr. Slade sent Flyway a demand letter alleging various causes of action arising from his alleged injuries. *Id.* ¶ 8; Delahunt Aff., Ex. 4.

On August 3, 2022, Beach Cruiser, through USI, informed Mt. Hawley of the July 23, 2022 incident. Plaintiff Rule 56.1 Stmt. ¶ 16. Mt. Hawley then conducted an investigation. *See id.* ¶ 17. On August 17, 2022, Mt. Hawley learned from Flyway that the Property had been rented out through Airbnb and Vrbo. *Id.*; Delahunt Aff., Ex. 14. On August 22, 2022, Mt. Hawley learned from Flyway that the Property had been rented through Vrbo on the date of the incident. Plaintiff Rule 56.1 Stmt. ¶ 17; Delahunt Aff., Ex. 15. On September 8, 2022, Mt. Hawley learned from

Flyway that the Property had been rented out through Airbnb and Vrbo since 2016.  Plaintiff Rule

56.1 Stmt. ¶ 18; Delahunt Aff., Ex. 16.

On November 14, 2022, Mt. Hawley sent Beach Cruiser a letter stating that it was rescinding

the Policy "pursuant to New York Insurance Law section 3105 based on material misrepresentations

in connection with Beach Cruiser's application for the policy," Beer Decl., Ex. S at 1, and that "[i]n

addition to the right to rescission, . . . Mt. Hawley does not admit that coverage exists and is

reserving all of its rights and remedies under the policy and applicable law," *id.* at 3.  The letter stated

that the Endorsement, which it characterized as an "exclusion," "precludes coverage for this loss"

because Beach Cruiser had provided "incorrect, false, inaccurate or incomplete information" in

response to Question 3 of the Application.  *Id.* at 5.  Finally, the letter stated that Mt. Hawley would

"participate in the defense of Beach Cruiser . . . on a courtesy basis" despite its position that it had

"no duty to defend or indemnify" Beach Cruiser in connection with the July 23, 2022 incident.  *Id.* at

6.  The letter "specifically reserve[d] [Mt. Hawley's] right to withdraw its defense" and "bring an

action in . . . federal court" to "obtain a declaration . . . to enforce the limitations mentioned herein

and declare the obligations and responsibilities of the parties."  *Id.* at 6–7.

## II.    PROCEDURAL HISTORY

Mt. Hawley commenced this action on December 7, 2022.  Dkt. No. 1.  Mt. Hawley filed the

operative amended complaint (the "AC") on December 8, 2022.  Dkt. No. 6.  The AC named Beach

Cruiser and Flyway as defendants, and sought three declarations from the Court:  first, that the

Policy is "void *ab initio* pursuant to New York Insurance Law section 3105"; second, that Mt.

Hawley "has no obligation to defend or indemnify Beach Cruiser or Flyway in connection with the

Humphrey Action, the Slade Claim, or the July 23, 2022 incident"; and third, that Mt. Hawley is

entitled to reimbursement for its costs in defending Beach Cruiser and Flyway in connection with

the July 23, 2022 incident.  AC ¶¶ 33–45.

On March 3, 2023, Nationwide General Insurance Company ("Nationwide") submitted a letter requesting to intervene in this action as an interested party. Dkt. No. 27 at 1. Nationwide stated that it had "issued its own policy to Flyway and is sharing with Mt. Hawley in the costs of defense in the [Humphrey] action." *Id.* On March 6, 2023, the Court issued an order permitting Nationwide to intervene in this action and to answer the AC. Dkt. No. 29. Nationwide filed an answer to the AC on March 27, 2023. Dkt. No. 44.

Defendants appeared in this case on April 19, 2023, Dkt. No. 47, and filed an answer and counterclaims to the AC on May 10, 2023, Dkt. No. 50. Defendants' counterclaims seek declarations that Mt. Hawley has a duty to defend and to indemnify Defendants in connection with the July 23, 2022 incident. *Id.* at 13–15. Defendants also bring a counterclaim for breach of contract, alleging that Mt. Hawley failed to defend, indemnify, or provide coverage to Defendants as required in the Policy.² *Id.* at 15–16.

On September 11, 2023, the parties stipulated to the dismissal of the AC's first cause of action for rescission pursuant to N.Y. Ins. Law § 3105. Dkt. No. 56.

On February 15, 2024, the parties submitted a letter stating that discovery was complete. Dkt. No. 66. On February 22, 2024, the Court held a conference to discuss the parties' anticipated motions and cross-motions for summary judgment. Dkt. No. 67. During the conference, Defendants requested that briefing on the parties' motions for summary judgment be delayed until after their scheduled mediation session on April 10, 2024. Dkt. No. 71 at 26–27. Plaintiff did not object to Defendants' request. *Id.* at 28. Accordingly, the Court ordered that the parties submit a joint letter on April 29, 2024 proposing a briefing schedule for their anticipated motions. Dkt. No.

---

² Defendants' motion papers do not address their breach of contract claim separately from their claims for declaratory relief. *See* Dkt. No. 83 at 6 ("Defendants Mem."). The Court agrees that these claims rise or fall together, and addresses them as such.

68.  The parties submitted the letter on April 29, 2024, and the Court adopted their proposed briefing schedule on April 30, 2024.  Dkt. Nos. 69, 70.

Mt. Hawley filed its motion for summary judgment on May 30, 2024.  Dkt. No. 73; Dkt. No. 74 ("Delahunt Aff."); Dkt. No. 75 ("Plaintiff 56.1 Stmt."); Dkt. No. 76 ("Plaintiff Mem."); Dkt. No. 89 ("Plaintiff Reply"); Dkt. No. 91 ("First Counter 56.1 Stmt."); Dkt. No. 93 ("Second Counter 56.1 Stmt.").  The motion seeks a declaration that Mt. Hawley does not have a duty to defend or indemnify Defendants in connection with the July 23, 2022 incident.  Plaintiff Mem. at 8.  Mt. Hawley does not seek summary judgment on its third cause of action, which seeks a declaration that it is entitled to reimbursement for its costs in defending Beach Cruiser and Flyway in connection with the July 23, 2022 incident.  *Id.* at 7.

Nationwide filed its cross-motion for summary judgment and opposition to Mt. Hawley's motion on July 8, 2024.  Dkt. No. 77; Dkt. No. 78 ("Beer Decl."); Dkt. No. 79 ("Nationwide 56.1 Stmt."); Dkt. No. 80 ("Nationwide Mem."); Dkt. No. 99 ("Nationwide Reply").  Defendants filed their cross-motion for summary judgment and opposition to Mt. Hawley's motion on the same day. Dkt. No. 81; Dkt. No. 82 ("Pierantoni Decl."); Dkt. No. 83 ("Defendants Mem."); Dkt. No. 84 ("Defendants 56.1 Stmt."); Dkt. No. 85 ("Pierantoni Aff."); Dkt. No. 96 ("Defendants Reply").

## III.    LEGAL STANDARD

### a.  Summary Judgment under Fed. R. Civ. P. 56(a)

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).  A

genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The party moving for summary judgment bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). If that initial burden is satisfied, the burden "shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim." *Id.* To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted), and she "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted). "Assessments of credibility and choices between conflicting versions of the

events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

"When confronted with cross-motions for summary judgment, the Court analyzes each motion separately, 'in each case construing the evidence in the light most favorable to the non-moving party.'" *Peterson v. Kolodin*, No. 13-cv-793, 2013 WL 5226114, at *1 (S.D.N.Y. Sept. 10, 2013) (quoting *Novella v. Westchester Cnty.*, 661 F.3d 128, 139 (2d Cir. 2011)); *accord Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). The Court is not required to resolve the case on summary judgment merely because both parties move for summary judgment. *Morales*, 249 F.3d at 121.

### b. The Declaratory Judgment Act

The Declaratory Judgment Act is used frequently to resolve insurance-coverage disputes. *See, e.g.*, *U.S. Specialty Ins. Co. v. Nationwide Mut. Ins. Co.*, No. 19-cv-7884 (MKV), 2020 WL 2489078, at *2 (S.D.N.Y. May 14, 2020) (citing *Assoc. Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992)). Under the Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A federal court may exercise jurisdiction over an action for declaratory judgment only if there "exists . . . an 'actual controversy.'" *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) (quoting 28 U.S.C. § 2201(a)). A justiciable declaratory judgment claim must be "definite and concrete, touching the legal relations of parties having adverse legal interests," as well as "'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)).

The Declaratory Judgment Act does not require a court to issue a declaratory judgment. It is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the

litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).  In deciding whether to entertain an action for declaratory judgment, the Court asks "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).

There is no dispute that this action is justiciable under the Declaratory Judgment Act.  Mt. Hawley is incurring defense costs in the Humphrey Action while it seeks a declaration from this Court.  *See* Plaintiff Mem. at 6 n.6; Beer Decl., Ex. S at 6–7.  And it is clear that a judgment regarding the scope of Mt. Hawley's obligations under the Policy will "serve a useful purpose" and "offer relief from uncertainty." *Duane Reade*, 411 F.3d at 389.

### c.  Interpretation of Insurance Contracts under New York Law

New York law governs this dispute.  The parties agree that New York law applies, Plaintiff Mem. at 8–9; Nationwide Mem. at 4 n.2; Beach Cruiser Mem. at 11, in accordance with the Policy's New York choice-of-law provision, Beer Decl., Ex. E § 1(BB).  The parties' "consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009).

Under New York law, the first place to look "[i]n determining a dispute over insurance coverage" is "the language of the policy." *Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 5 N.Y.3d 157, 162 (2005) (quoting *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 N.Y.2d 208, 221 (2002)).  Ambiguous language is resolved "in favor of the insured." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010).  "But if an insurance policy is 'clear and unambiguous,' it is to be given its 'plain and ordinary meaning,' and courts are to refrain from rewriting the agreement." *Id.* (quoting *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d

Cir. 2009)).  Accordingly, the meaning of a policy's unambiguous terms must be determined "without reference to extrinsic materials."  *Goldman v. White Plains Ctr. for Nursing Care, LLC*, 11 N.Y.3d 173, 176 (2008).

Whether an insurance policy's language is ambiguous "is a question of law to be resolved by the courts."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quotation omitted); *accord Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998).  "Ambiguity is determined by looking within the four corners of the document, not to outside sources."  *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (quotation omitted).  A provision in the policy is ambiguous if "there is a reasonable basis for a difference of opinion as to [its] meaning."  *Selective Ins. Co. of Am. v. Cnty. of Rensselaer*, 26 N.Y.3d 649, 655–56 (2016).  It is unambiguous if there is none.  *Id.* at 655.

## IV.    DISCUSSION

Summary judgment is appropriate here because the Policy unambiguously excludes coverage in connection with the July 23, 2022 incident.  *See Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008).  There is only one reasonable reading of Question 3 in the Application.  Defendants' response to Question 3 was plainly false.  And the Endorsement unambiguously excludes coverage if the insured provided false answers in the Application.

The Court finds no basis to vitiate the Endorsements under New York Insurance Law § 3105(b), which to the Court's knowledge has never been applied to add a materiality requirement to an agreed-upon exclusion of coverage in an insurance contract.  Accordingly, Plaintiff's motion for summary judgment is granted and Defendants' and Nationwide's motions for summary judgment are denied.

### a.  The Policy Unambiguously Excludes Coverage

The Policy unambiguously excludes coverage for Defendants' claims.  Question 3 in the Application asked a simple yes-or-no question about the properties Defendants sought to cover

11

under the Policy: "Are any properties rented by the day or by the week?"  Application at 1.  The

correct answer to this question was "Yes," because "any" in this context means "one or more," *Any*

2a, Merriam-Webster, https://www.merriam-webster.com/dictionary/any, and Defendants had

been renting the Property by the day or by the week for years, Plaintiff 56.1 Stmt. ¶ 18; Delahunt

Aff., Ex. 16.  Defendants, however, checked "No."  Plaintiff 56.1 Stmt. ¶ 15.  This answer was

"incorrect," "inaccurate," and "false."  As a result, the plain terms of the Endorsement establish that

"[t]here is no coverage under [the Policy]," and that Plaintiff has "no duty to defend or indemnify"

Defendants.  *Id.* ¶ 12.

Defendants' alternative interpretation of these provisions is not reasonable and therefore

does not render the provisions ambiguous.  "Language whose meaning is otherwise plain does not

become ambiguous merely because the parties urge different interpretations in the litigation," *L.*

*Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010), and "no

ambiguity exists where the alternative construction would be unreasonable," *Readco, Inc. v. Marine*

*Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996).  Defendants concede that their answer to Question 3

was "not 100% accurate," Defendants Mem. at 18, but argue that the question "Are any properties

rented by the day or by the week?" admits of responses that are "reasonably accurate," *see id.* at 17–

18, and that Defendants' "No" response was "reasonably accurate" because only 3 of their 30

properties were rented on a daily[3] or weekly basis, *id.* at 18.  Defendants also complain that Question

3 did not provide them a space to clarify that only a small number of their properties met its criteria.

*Id.* at 18–20.

---

[3] Defendants add a conclusory argument that they "did not rent any units daily," but instead rented units "weekly and overnight."  Defendants Mem. at 18.  Defendants do not explain why there is a meaningful difference between renting a property "by the day," as phrased in Question 3, and renting a property "overnight."  *See id.*  Nor do they explain why the three-day rental they issued to the party on the date of the July 23, 2022 incident was not a rental "by the day." Plaintiff 56.1 Stmt. ¶ 3.  In any event, Defendants concede in their brief that they rented several of their properties on a weekly basis.  Defendants Mem. at 18.  That alone renders their answer to Question 3 false.

These are not reasonable readings of the Policy's terms.  Again, Question 3 is a straightforward true-or-false question.  An applicant either has "any" properties that meet Question 3's criteria, or it does not.  *See* Application at 1; *see, e.g.*, *Any*, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/any (defining "any" as "one, no matter which, of more than two").  Question 3 does not admit of any gray area for "reasonably accurate" responses, Defendants Mem. at 17–18, and there is no need for an applicant to provide an explanation for its response, *id.* at 18–20.  Because Defendants sought coverage for several properties that met Question 3's unambiguous criteria, "Yes" was true, and "No" was not only "not 100% accurate," it was 100% false.[4]

Defendants do not dispute that the plain terms of the Endorsement exclude coverage[5] where

---

[4] Defendants argue briefly that the Application, as defined in the Endorsement, encompasses two correspondences in which Defendants purportedly apprised Mt. Hawley of Defendants' "short term rentals."  Defendants Mem. at 9.  Defendants argue that these correspondences make up for any false information provided in response to Question 3, and thus that the exclusion in the Endorsement "does not apply."  *Id.*  Defendants' argument fails under the Policy's plain terms.  Even accepting that Defendants' correspondences notified Plaintiff that some of their properties were "short term rentals," and even accepting that the term "short term rentals" is synonymous with "rented by the day or by the week" as in Question 3, Plaintiff 56.1 Stmt. ¶ 3, both correspondences took place months after Mt. Hawley had already issued the Policy in August 2021, *see* Nationwide 56.1 Stmt. ¶¶ 23–24 (describing email in February 2022 and correspondences in August 2022); Plaintiff Rule 56.1 Stmt. ¶ 9, and the Endorsement's definition of "Application" was limited to "information submitted to [Mt. Hawley] in connection with or relating to the *issuance* of the policy," Plaintiff Rule 56.1 Stmt. ¶ 12 (emphasis added).

[5] Nationwide and Defendants both agree that the Endorsement creates an exclusion from coverage under the Policy.  *See* Defendants Mem. at 9; Nationwide Reply at 5–9.  Plaintiff, likewise, characterized the Endorsement as an exclusion in its November 14, 2022 letter to Defendants disclaiming coverage under the Policy.  Beer Decl. Ex. S at 5.  In a footnote, however, Plaintiff's reply brief argues that the Endorsement creates an express condition precedent to coverage rather than an exclusion.  Plaintiff Reply at 29 n.9.  A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."  *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 305 (2d Cir. 2016).  An insurance exclusion, by contrast, merely "exclude[s] certain coverage from [an insurer's] policy obligations."  *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984).  Under New York law, express conditions precedent "must be literally complied with before [a contracting party] may recover," *Seaport Park Condo. v. Greater New York Mut. Ins. Co.*, 828 N.Y.S.2d 381, 384 (1st Dep't 2007), while exclusions from insurance coverage "are given the interpretation most beneficial to the insured," *M.H. Lipiner & Son, Inc. v. Hanover Ins. Co.*, 869 F.2d 685, 687 (2d Cir. 1989).  "Generally speaking, New York respects a presumption that terms of a contract are covenants rather than conditions," *Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998), and "the law . . . demands that conditions precedent be expressed in unmistakable language," *Bank of New York Mellon*, 821 F.3d at 305 (quotation marks omitted); *accord Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 691 (1995) ("In determining whether a particular agreement makes an event a condition courts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition.").  Here, the Court does not find that the language in the Endorsement unmistakably establishes a precondition to the parties' obligations to perform under the Policy.  The Court observes, for example, that the Endorsement "does not caption or otherwise label the [misrepresentation] provision as a 'condition precedent' to [coverage], as one might expect sophisticated parties to do if that were their intent."  *Bank of New York Mellon*, 821 F.3d at 305.  Plaintiff itself

13

a false response is given to Question 3. *See* Defendants Mem. at 9–11. Because Defendants provided a false response to Question 3, therefore, their claims arising from the July 23, 2022 incident are not covered under the Policy. *See* Plaintiff 56.1 Stmt. ¶ 12. Exclusionary clauses are enforceable as a matter of law where their terms "are subject to no other reasonable interpretation" and an insurer carries its burden of establishing that they "apply in the particular case." *Seaboard Sur. Co.*, 64 N.Y.2d at 311; *see also Brooklyn L. Sch. v. Aetna Cas. & Sur. Co.*, 849 F.2d 788, 789 (2d Cir. 1988) (explaining that an "insurer is relieved of its obligation to defend" if a policy exclusion applies). Plaintiff has carried its burden of establishing that the Endorsement's terms apply to Defendants' claim, *Seaboard Sur. Co.*, 64 N.Y.2d at 311, as Defendants' answer to Question 3 was false and that is the express scenario to which the Endorsement applies, Plaintiff Rule 56.1 Stmt. ¶ 12 ("There is no coverage under this policy . . . if, at any time regardless of intent, you or any other insured provide incorrect, false, inaccurate or incomplete information in the Application for this policy."); *see M.H. Lipiner*, 869 F.2d at 687 (granting summary judgment where policy excluded insured's claim for indemnity); *United Specialty Ins. Co. v. Barry Inn Realty Inc.*, 130 F. Supp. 3d 834, 842 (S.D.N.Y. 2015) (same).[6]

Nor did Plaintiff waive its right to enforce the Endorsement's exclusions by renewing the Policy for another year, Defendants Mem. at 12–14, as the doctrine of waiver does not apply to excluded claims. Under New York law, insurance "coverage is the net total of policy inclusions minus exclusions, and the failure to disclaim based on an exclusion will not give rise to coverage that does not exist." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 323 (1995); *accord Zappone v. Home*

---

characterized the Endorsement as an "exclusion" in its November 14, 2022 letter, Beer Decl., Ex. S at 5, and treats the Endorsement as an exclusion everywhere in its reply brief except for in the footnote arguing that it is a condition precedent, *see, e.g.*, Plaintiff Reply at 6–7, 12. The Court concludes that the Endorsement is an exclusion.

[6] Because Question 3 was unambiguous, Defendants' argument that their concededly inaccurate answer "was reasonable from [their] perspective" on the basis of documents extrinsic to the Policy, Defendants Mem. at 14–16, is irrelevant. "A party is precluded from introducing extrinsic evidence with regard to an unambiguous contract in order to vary the plain meaning of the writing." *Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1166 (2d Cir. 2024) (cleaned up).

*Ins. Co.*, 55 N.Y.2d 131, 134 (1982) (explaining that "the failure to disclaim coverage does not create coverage which the policy was not written to provide"). Where, as here, "the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable." *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698 (1980). The exclusion in the Endorsement eliminated coverage in connection with the July 23, 2022 incident, and accordingly, no coverage existed that could be waived. *See Coregis Ins. Co. v. Lewis, Johs, Avallone, Aviles & Kaufman, LLP*, No. 01-cv-3844 (SJ), 2006 WL 2135782, at *14 (E.D.N.Y. July 28, 2006) ("Where an exclusion makes clear that coverage under an insurance policy does not exist, coverage cannot be attained by waiver, which is a voluntary and intentional relinquishment of a known right."). Defendants "cannot, by the doctrine of waiver, obtain insurance coverage to more than [they] originally bargained." *Hall v. Mountain Valley Indem. Co.*, No. 23-cv-2496 (LJL), 2024 WL 4635329, at *4 (S.D.N.Y. Oct. 30, 2024) (quotations and alterations omitted).[7]

### b. New York Insurance Law § 3105(b) Does Not Defeat Mt. Hawley's Claim

Section 3105(b) does not vitiate the parties' agreed-upon Endorsement. Section 3105(b) provides, in relevant part, that "[n]o misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material." N.Y. Ins. Law § 3105(b)(1). Defendants and Nationwide argue that the Endorsement "violates Section 3105" because it excludes coverage in the event of any misrepresentations in the Application regardless of whether those misrepresentations were material. Nationwide Reply at 9–10. The Court recognizes, as at least one other court has, that "the language of [Section 3105(b)], that no misrepresentation should 'defeat recovery' unless it is material, might be interpreted to apply . . . in determining

---

[7] Defendants cite to a single case, *Weintraub v. Great N. Inc. Co.*, in support of their argument that Plaintiff waived its right to assert the exclusion in the Endorsement. Defendants Mem. at 13 (citing 571 F. Supp. 3d 250 (S.D.N.Y. 2021)). *Weintraub* is inapplicable. That case applied the waiver doctrine to a late-notice defense. *Weintraub*, 571 F. Supp. 3d at 263–64. It did not hold that the invocation of an exclusionary clause could be waived.

whether recovery under a particular contract is possible." *Gluck v. Exec. Risk Indem., Inc.*, 680 F. Supp. 2d 406, 416 (E.D.N.Y. 2010). The Court agrees with that same court's ultimate conclusion, however, that Section 3105(b)'s "materiality inquiry appears to have no place" where, as here, the question is "whether or not a particular exclusion applies." *Id.*

Section 3105(b) codifies a right that insurers have long had at common law to defeat recovery where a policy was issued based on a material misrepresentation. *See Armour, et al. v. Transatlantic Fire Insurance Company*, 90 N.Y. 450, 455–56 (1882) ("[I]t is an implied condition of the contract of insurance that it is free from misrepresentation or concealment . . . . If the misrepresentation induces the insurer to enter into a contract which he would otherwise have declined, . . . it avoids the contract."); *CIFG Assur. N. Am., Inc. v. J.P. Morgan Sec. LLC*, 44 N.Y.S.3d 2, 8 (1st Dep't 2016) ("[Section 3105(b)] . . . merely codifies common law principles."). To the Court's knowledge, Section 3105(b) has never been interpreted to "extend a materiality requirement to contractual exclusions." *Gluck*, 680 F. Supp. 2d at 417. That practice is consistent with the plain language of Section 3105(b), as "excluded claims are, by prior agreement, not part of the insurance contract," *id.*, and Section 3105(b) only applies where an insurer seeks to defeat recovery for a claim that would have otherwise been insured, N.Y. Ins. Law § 3105(b) ("No misrepresentation shall avoid any contract of insurance or defeat recovery *thereunder* unless such misrepresentation was material." (emphasis added)).

Section 3105(b), as courts have consistently described it, grants insurers two options in the event that an insured makes a material misrepresentation in its application for a policy: the insurer may either "'avoid [a] contract of insurance' (i.e., pursue the remedy of rescission)," or "'defeat recovery' under the insurance contract (i.e., defeat an insured's claim for payment)." *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 56 N.Y.S.3d 21, 26 (1st Dep't 2017), *aff'd sub nom. Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 31 N.Y.3d 569 (2018) (quoting N.Y. Ins. Law

§ 3105(b)); *see also, e.g.*, *Vella v. Equitable Life Assur. Soc. of U.S.*, 887 F.2d 388, 391 (2d Cir. 1989) (citing Section 3105(b) and noting "New York courts have held that, where there has been a misrepresentation by an insured, the insurance company can avoid liability on the policy by showing that" the misrepresentation was material) (collecting cases). Courts have interpreted Section 3105(b) in this way because it is "merely [a] codifi[cation] [of] common law insurance principles" which have permitted insurers these remedies for well over one hundred years. *See Ambac*, 56 N.Y.S.3d 21, 25 (quotations and alterations omitted); *see generally E. Dist. Piece Dye Works v. Travelers' Ins. Co.*, 234 N.Y. 441, 449–50 (1923) (detailing history of defenses to coverage and explaining that "[a] misrepresentation contained in the application [for insurance] only became a defense if it related to a material matter," and that "[i]f material it constituted a defense, although made innocently and without any feature of fraud"). One of the points of the statute, as explained by the Court of Appeals, was "to overrule prior case law which did not require a showing of materiality for an insurer to avoid its obligations under a policy based on the insured's misrepresentations." *Ambac*, 31 N.Y.3d at 580. In doing so, the statute "benefit[ted] the insured party," *id.*, but also affirmed, "in codified form," the "common law principle[]" that "a material misrepresentation . . . for effecting the insurance will defeat it," Kaplan & Gross, Commentaries on the Revised Insurance Law of New York § 149 at 338–42 (1940) (quoting *Armour*, 90 N.Y. at 456) (observing that Section 3105's predecessor statute "restates generally, . . . in codified form, common law principles long established in the field of insurance") (collecting cases); *see also e.g.*, *Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.*, 385 N.Y.S.2d 308, 311 (1976), *aff'd sub nom. Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.*, 42 N.Y.2d 928 (1977) (collecting case law addressing the "defense sounding in equity to rescind, i.e., set aside an insurance contract for material misrepresentation").

The effect of Section 3105(b) on New York insurance law, therefore, has been to establish a "statutory right" that insurers can invoke to defeat insurance claims, *Alexi Home Design, Inc. v. Union*

*Mut. Fire Ins. Co.*, 203 N.Y.S.3d 57, 59 (1st Dep't 2024), which is distinct from insurers' ability to defeat claims under an exclusion within the insurance contract itself, *see, e.g.*, *Waters v. New York Prop. Ins. Underwriting Ass'n*, 862 N.Y.S.2d 812 (Sup. Ct. 2005) (denying coverage based on exclusion in insurance contract, then separately finding that insurer was entitled to rescission under Section 3105(b)); *Chicago Ins. Co. v. Halcond*, 49 F. Supp. 2d 312, 319 (S.D.N.Y. 1999) (analyzing insurer's attempts to defeat coverage based on contract exclusions and Section 3105(b) separately); *Barkan v. New York Sch. Ins. Reciprocal*, 886 N.Y.S.2d 414 (2d Dep't 2009) (similar); *Koczwara v. Nationwide Gen. Ins. Co.*, No. 20-cv-2579 (BCM), 2022 WL 1471121, at *6–7 (S.D.N.Y. May 10, 2022) (similar). Insurers can invoke Section 3105(b) to defeat liability without "establish[ing] that the policy itself" precludes coverage. *Kiss Const. NY, Inc. v. Rutgers Cas. Ins. Co.*, 61 A.D.3d 412, 414 (1st Dep't 2009). As the Court of Appeals recently explained, the statute "is only relevant when an insurer seeks rescission of an insurance contract or is defending against claims for payment under an insurance contract." *Ambac*, 31 N.Y.3d at 580; *accord Ambac*, 56 N.Y.S.3d at 26 ("Cases applying [Section 3105] arise in the context of either a declaratory judgment action by an insurer seeking rescission of an insurance policy or an insurer asserting a defense to an insured's claim for payment under the policy.") (collecting cases).

The Court, accordingly, has been unable to find a case applying Section 3105(b) to modify the substance of an exclusion in an insurance contract. Nor have Nationwide and Defendants. *See* Nationwide Mem. at 9–11; Nationwide Reply at 3–11; Defendants Mem. at 20–21; Defendants Reply at 11–13. *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 963 N.Y.S.2d 21 (1st Dep't 2013), which Nationwide analyzes at length, Nationwide Mem. at 9–10; Nationwide Reply at 5–6, does not address the question here. *MBIA* addressed whether Section 3105(b) superseded the causation element of an insurer's common-law fraudulent-inducement claim arising from an insurance contract. 963 N.Y.S.2d 21, 22; *see also MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 936 N.Y.S.2d

513, 518 (N.Y. Sup. Ct. 2012), *affirmed in relevant part*, 963 N.Y.S.2d 21.[8]  The court concluded that

Section 3105(b) applied to the insurer's fraud claim in light of "the insurer/insured nature of the

relationship between the parties to the contract," 963 N.Y.S.2d at 22, and thus that the insurer could

dispense with the common-law requirement that it establish loss causation because Section 3105(b)'s

definition of a material misrepresentation does not require a causal connection, *id.*; *see* N.Y. Ins. Law

§ 3105(b) ("No misrepresentation shall be deemed material unless knowledge by the insurer of the

facts misrepresented would have led to a refusal by the insurer to make such contract."); *Mut. Benefit*

*Life Ins. Co. v. Snyder*, No. 88-cv-4364 (LBS), 1989 WL 16610, at *3 (S.D.N.Y. Feb. 21, 1989) ("For

purposes of determining materiality, there need not be a causal connection between the

misrepresented condition and the loss suffered.").  Unlike here, there was no question in *MBIA* that

the relevant insurance policies provided for coverage.  *See MBIA*, 936 N.Y.S.2d at 523 (noting that

the insurer had "'unconditionally and irrevocably guarantee[d]' payments under the policies").  And

in any event, the First Department later flatly rejected *MBIA*'s conclusion that Section 3105(b) is

applicable to an insurer's common-law claim for fraudulent inducement, *Ambac*, 56 N.Y.S.3d at 26 &

n.3 (holding that Section 3105(b) was not "intended to alter the essential elements of a fraud claim"

and thus "declin[ing] to follow that part of [*MBIA*]"), in a decision that was affirmed by the Court of

Appeals, *Ambac*, 31 N.Y.S.3d at 579 (holding that Section 3105 "plays no role" in insurer's common-

law fraudulent inducement claim).

   The language in Section 3105(b) sanctions the enforcement of a policy's exclusionary

provisions, including those at issue here.  Section 3105(b) applies where an insurer seeks to "avoid

any contract of insurance or defeat recovery *thereunder*."  N.Y. Ins. Law § 3105(b) (emphasis added).

---

[8] The *MBIA* court separately addressed whether New York Insurance Law § 3106, which provides that a "breach of warranty shall not avoid an insurance contract or defeat recovery thereunder unless such breach materially increases the risk of loss, damages or injury within the coverage of the contract," N.Y. Ins. Law § 3106(b), could inform a court's analysis of a plaintiff-insurer's breach-of-warranty claim.  *See MBIA*, 963 N.Y.S.2d at 22; *MBIA*, 936 N.Y.S.2d at 518.

It does not apply where a claim is not covered under the policy in the first place. *See Ambac*, 31 N.Y.3d at 580 ("[S]ection 3105 is only relevant when an insurer seeks rescission of an insurance contract or is defending against claims for payment under an insurance contract."). Just so with respect to claims that fall under an exclusionary clause, as "excluded claims are, by prior agreement, not part of the insurance contract." *Gluck*, 680 F. Supp. 2d at 417; *see also Brooklyn L. Sch.*, 849 F.2d at 789 (noting that an insurer has no duty to defend if a policy exclusion applies). Exclusionary clauses, under New York law, define the scope of insurance coverage on equal footing with a policy's "affirmative[] indicat[ions] [of] coverage." *Albert*, 51 N.Y.2d at 697. Coverage "is the net balance . . . of a coming together of the two . . . it is not either alone, but the combination of both, which defines the scope of the protection afforded." *Id.* Exclusions, accordingly, "must be given effect by [their] own terms, and without reference to materiality [as defined in Section 3105(b)]," *Gluck*, 680 F. Supp. 2d at 419, because they "define[] the scope of the protection" to which Section 3105(b) applies, *Albert*, 51 N.Y.2d at 697.

One effect of Defendants' agreement to exclude coverage in the event of misrepresentations, therefore, was to preclude the applicability of Section 3105(b). *See Gluck*, 680 F. Supp. 2d at 416–17.[9] In *Gluck v. Executive Risk Indem., Inc.*, a case similar to this one, Judge Trager conducted an extensive analysis of the applicability of Section 3105(b) to exclusionary clauses, 680 F. Supp. 2d at 416–19, and likewise concluded that the statute "should not be read to extend a materiality requirement to contractual exclusions," *id.* at 417. The insureds in *Gluck* had misrepresented their knowledge of a prior settlement in their application, an act which "excluded [their claims] from the

---

[9] Having found that the Endorsement is not inconsistent with Section 3105(b), the Court rejects Nationwide's argument that the Endorsement "violates the requirements or prohibitions" of New York insurance law and must therefore be read to "conform[] with such requirements or prohibitions." Nationwide Reply at 6–7 (quoting *Bersani v. Gen. Acc. Fire & Life Assur. Corp.*, 36 N.Y.2d 457, 460 (1975)).

proposed insurance." *Id.* at 412.   The court observed, as Defendants argue here,[10] that it "seem[ed]

quite possible that [the insurer] would have issued the same policy" had that misrepresentation not

occurred. *Id.* at 418–19; *see* Nationwide Mem. at 12–14; Defendants Mem. at 20.  The materiality of

the insureds' misrepresentation, however, was irrelevant, because the misrepresentation fell under a

policy exclusion and "exclusions are not subject to the materiality inquiry of [Section 3105(b)]."

*Gluck*, 680 F. Supp. 2d at 417.   Judge Trager persuasively articulated why "exclusions differ from

misrepresentations such that they fall outside the ambit of Section 3105," and the policy behind this

distinction:

> [T]he purpose behind the materiality provision [in Section 3105(b)] was to stop an
> insurer from *ex post* disclaiming an insurance contract, which proved to be a bad deal
> only in hindsight, by nitpicking the insurance application for minor
> misrepresentations unrelated to the claim for which coverage was being sought . . . .
> An exclusion, however, is different from an attempted *ex post* disclaimer of coverage.
> By including an exclusion, an insurer makes clear to the insured that any claim that
> arises from a *particular* fact will not be covered by the contract, whereas other claims
> are free to proceed.  These exclusions are bargained-for contractual arrangements,
> and an insured is on notice before the contract is entered that such exclusions are
> not part of the coverage provided for the premium paid.  Thus, in contrast to
> situations where a claim, by the plain language of the contract, would be covered
> except that an insurer later alleges a material misrepresentation somewhere in the
> contract, exclusions let the insured know up front that claims arising from certain
> facts are not covered.

*Id.* at 418 (citations omitted).  Judge Trager's analysis is consistent with the case law applying Section

3105(b) discussed above, which has consistently applied Section 3105(b) only where a claim "would

be covered except that an insurer later alleges a material misrepresentation."  *Id.*; *see e.g.*, *Ambac*, 56

N.Y.S.3d at 25; Kaplan & Gross, Commentaries on the Revised Insurance Law of New York § 149

at 338–42 (1940).  His analysis applies equally to Defendants' agreement to exclude coverage in the

event that they provided false information in their application for the policy.  Plaintiff Rule 56.1

---

[10] For the avoidance of doubt, the Court takes no position on the merits of Defendants' and Nationwide's arguments regarding the materiality of Defendants' misrepresentation.  Because Section 3105(b) is inapplicable to Defendants' claims, "the materiality of [Defendants'] misrepresentation in this particular case must be ignored."  *Gluck*, 680 F. Supp. 2d at 418.

Stmt. ¶ 12.

Because enforcing the Endorsement according to its terms is not inconsistent with Section 3105(b), the Endorsement is not, as Defendants and Nationwide argue, "void . . . as a matter of public policy." Defendants Mem. at 21. There is no dispute that the parties freely and mutually agreed to the Endorsement. *See* Plaintiff 56.1 Stmt. ¶ 12. "Absent some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish." *U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap., Inc.*, 38 N.Y.3d 169, 177 (2022) (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 67–68 (1978)). "[F]reedom of contract is itself a strong public policy interest in New York," and a contract provision will only be held unenforceable on public-policy grounds "where the public policy in favor of freedom of contract is overridden by another weighty and countervailing public policy." *159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 360 (2019). "Although [courts] possess the power to set aside agreements on this basis, [their] 'usual and most important function' is to enforce contracts rather than invalidate them 'on the pretext of public policy,' unless they 'clearly . . . contravene public right or public welfare." *Id.* at 361 (quoting *Miller v Continental Ins. Co.*, 40 N.Y.2d 675, 679 (1976)); *see also Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc.*, 30 NY3d 572, 581 (2017) ("[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." (quotation omitted)). The Court of Appeals "regularly uphold[s] agreements waiving statutory or constitutional rights" under these principles, and has identified "[o]nly a limited group of public policy interests . . . as sufficiently fundamental to outweigh the public policy favoring freedom of contract." *159 MP Corp.*, 33 N.Y.3d at 361.

Defendants and Nationwide argue, without citation to any case law, that the Endorsement is unenforceable "as a matter of public policy" because it is impermissibly overbroad. Defendants Mem. at 20–21. Nationwide is correct that the Endorsement, by its plain terms, permits Plaintiff to

deny "any claim based on any misrepresentation in the underwriting of its policies." Nationwide

Reply at 10 (emphases omitted). The parties' dissatisfaction with the breadth of the Endorsement,

however, is not a basis to void it on public-policy grounds. *Oppenheimer & Co. v. Oppenheim, Appel,*

*Dixon & Co.*, 86 N.Y.2d 685, 695 (1995) ("If [the parties] are dissatisfied with the consequences of

their agreement, the time to say so was at the bargaining table."). "This is especially true" given that

the Endorsement is the product "of arm's length . . . negotiat[ions] by sophisticated and counseled

entities." *Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 22 N.Y.3d 413, 424 (2013). By their own

admission, Defendants own, manage, and contract for insurance on at least thirty rental properties,

Defendants Mem. at 17–18, and had done so for years before agreeing to the Endorsement, *see*

Plaintiff Rule 56.1 Stmt. ¶ 18; Delahunt Aff., Ex. 16. Given their sophistication, Defendants "could

have insisted" at the bargaining table that the Endorsement apply only to material

misrepresentations. *Iberdrola Energy Projects v. Oaktree Cap. Mgmt. L.P.*, 216 N.Y.S.3d 124, 130 (1st

Dep't 2024); *see also Oppenheimer*, 86 N.Y.2d at 695.

Moreover, having agreed to "such a sweeping . . . provision," *Iberdrola Energy Projects*, 216

N.Y.S.3d at 130, Defendants could have refrained from falsely representing that they were not

renting any of their properties by the day or by the week, as requested in Question 3 and as required

for the Endorsement to exclude coverage, Plaintiff Rule 56.1 Stmt. ¶¶ 3, 12; *see Grumman Allied*

*Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735 (2d Cir. 1984) ("[W]here the parties to an agreement

have expressly allocated risks, the judiciary shall not intrude into their contractual relationship.").

Whatever interest Defendants have in protection from coverage exclusions based on their

immaterial misrepresentations, therefore, is not "so weighty and fundamental that it cannot be

waived by sophisticated, counseled parties." *159 MP Corp.*, 33 N.Y.3d at 363. The Endorsement

thus "does not violate the type of public policy interest that would outweigh the strong public policy

in favor of freedom of contract." *Id.* (holding that a contractual waiver of right to seek declaratory

judgment as to the contract's lease terms was not void against public policy); *see Iberdrola*, 216 N.Y.S.3d at 130 (holding that a contractual provision disclaiming liability for "any claim based [on the contract] or otherwise in respect thereof" barred plaintiff's fraud claim and did not violate public policy, noting that "[h]ad plaintiff wanted to limit the nonrecourse provision to breach of contract claims, it should not have agreed to such a sweeping nonrecourse provision").

V.    **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED and Defendants' and Nationwide's motions for summary judgment are DENIED. The Court declares that Plaintiff Mt. Hawley Insurance Company has no obligation under the Policy to defend or indemnify Defendants Beach Cruiser, LLC and Flyway Management, LLC in connection with the July 23, 2022 incident. Defendants' counterclaims for breach of the Policy and for declarations that Plaintiff has duties to defend and indemnify Defendants in connection with the July 23, 2022 incident are dismissed. Defendants' claim for reimbursement of its costs in defending this declaratory judgment action, Defendants' Mem. at 21–22, is also dismissed.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 73, 77, and 81.

SO ORDERED.

Dated:  March 6, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge